UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x

KATHERINE GRIFFIN, individually and as
trustee of the Katherine Griffin Living Trust,

                    Plaintiff,

        v.

GOLDMAN, SACHS & CO. and
SOFIA FRANKEL,

               Defendants.

——————————————————— x

     08 Civ. 2992 (LMM)

     ECF CASE

# DEFENDANTS GOLDMAN, SACHS & CO. AND SOFIA FRANKEL'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

Table of Contents

PAGE

TABLE OF AUTHORITIES .................................................................................. iii

PRELIMINARY STATEMENT ............................................................................. 1

PROCEDURAL HISTORY AND THE COMPLAINT ......................................... 2

ARGUMENT .......................................................................................................... 3

I.     PLAINTIFF'S CLAIMS ARE BARRED BY COLLATERAL
       ESTOPPEL ................................................................................................... 4

II.    EVEN IF PLAINTIFF'S CLAIMS WERE NOT BARRED BY
       COLLATERAL ESTOPPEL THEY WOULD BE TIME-BARRED ............... 6

       A.    The "Continuous Representation" Doctrine Does Not Apply Here ....... 7

              1.    The Continuous Representation Doctrine Does Not Apply
                   to Brokers Such As Ms. Frankel ................................................ 7

              2.    Even If The Continuous Representation Doctrine Could
                   Apply to Stockbrokers, It Would Not Toll The Statute Of
                   Limitations Here ........................................................................ 9

       B.    The Doctrine Of Fraudulent Concealment Is Inapplicable Here ......... 11

III.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM ....................... 12

       A.    Plaintiff Fails To State A Claim For Fraud ........................................ 12

              1.    Plaintiff Fails To State A Claim For Fraud Based On
                   Statements At The "Initial Meeting" ......................................... 12

              2.    Plaintiff Fails To State A Claim For Fraud Based On
                   Transactions In Her Account Or "Holding Losses While
                   Taking Profits" .......................................................................... 15

              3.    Plaintiff Fails To State A Claim For Fraud Based On
                   "Analyst Reports" And eToys ................................................... 18

              4.    Plaintiff Fails To State A Claim For Fraud Based On
                   Allegations That Ms. Frankel Represented She Was A
                   Knowledgeable, Experienced Broker And Had Plaintiff's
                   Best Interests At Heart ............................................................... 21

       B.    Plaintiff Fails To State A Claim For Breach Of Contract ................... 21

      C.     Plaintiff Fails To State A Claim For Breach Of Fiduciary Duty ..........................23

IV.  IF THE COURT DOES NOT DISMISS PLAINTIFF'S CLAIMS, IT
     SHOULD DIRECT THE PARTIES TO ARBITRATION .............................................24

CONCLUSION ........................................................................................................................25

KL3 2648914 9

# TABLE OF AUTHORITIES

## CASES

*Acito v. Imcera Group, Inc.*
  47 F.3d 47 (2d Cir. 1995) ................................................................. 13

*Active Media Services, Inc. v. Grant Prideco, Inc.,*
  35 A.D.3d 165, 826 N.Y.S.2d 889 (1st Dep't 2006) .......................... 5

*Advanced Mktg. Group, Inc. v. Bus. Payment Sys.,LLC,*
  481 F. Supp. 2d 319 (S.D.N.Y. 2007) .............................................. 21

*In re Allied Capital Corp. Sec. Litig.,*
  02 Civ. 3812, 2003 U.S. Dist. LEXIS 6962 (S.D.N.Y. Apr. 25, 2003) ................ 13

*Am. Ins. Co. v. Messinger,*
  43 N.Y.2d 184, 401 N.Y.S.2d 36 (1977) ........................................... 5

*Atkinson v. Mobil Oil Corp.,*
  205 A.D.2d 719, 614 N.Y.S.2d 36 (2d Dep't 1994) ........................... 22

*Bastys v. Rothschild,*
  97 Civ. 5154, 2000 U.S. Dist. LEXIS 17944 (S.D.N.Y. Nov. 20, 2000) ............ 10

*Bell Atl. Corp. v. Twombly,* ___ U.S. ___,
  127 S. Ct. 1955 (2007) ..................................................................... 3

*Bissell v. Merrill Lynch & Co., Inc.,*
  37 F. Supp. 237 (S.D.N.Y. 1996) ...................................................... 4

*Booth v. Kriegel,*
  36 A.D.3d 312, 825 N.Y.S.2d 193 (1st Dep't 2006) ...................... 9, 10

*Borges v. Entra Am., Inc.,*
  No. 722/06, 18 Misc. 3d 134(A), 2008 N.Y. Misc. LEXIS 235 (Sup. Ct. App. Term
  N.Y. Co. Jan. 29, 2008) ................................................................... 17

*Borgia v. City of New York,*
  12 N.Y.2d 151, 237 N.Y.S.2d 319 (1962) ......................................... 7

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,*
  98 F.3d 13 (2d Cir. 1996) ............................................................... 17

*Cantor Fitzgerald Inc. v. Lutnick,*
  313 F.3d 704 (2d Cir. 2002) .............................................................. 4

KL3 2648914.9

*Carlingford Ctr. Point Associates v. MR Realty Associates,*
   4 A.D.3d 179, 772 N.Y.S.2d 273 (1st Dep't 2004) ................................ 5

*Castellano v. Young & Rubicam, Inc.,*
   257 F.3d 171 (2d Cir. 2001) ........................................................ 23

*Castle Oil Corp. v. Thompson Pension Employee Plans, Inc.,*
   299 A.D.2d 513, 750 N.Y.S.2d 629 (2d Dep't 2002) ....................... 8

*Chase Scientific Research v. NIA Group, Inc.,*
   96 N.Y.2d 20, 725 N.Y.S.2d 592 (2001) ................................... 8, 9 n4

*Clifton v. Vista Computer Services LLC,*
   01 Civ. 10206 2002 U.S. Dist. LEXIS 12977 (S.D.N.Y. July 16, 2002) ............. 16

*Craig v. Bank of New York,*
   169 F. Supp. 2d 202 (S.D.N.Y. 2001), *aff'd*, 59 Fed. Appx. 388 (2d Cir. Mar. 6,
   2003) .......................................................................... 24

*Drance v. Citigroup,*
   05 Civ. 0001, 2006 U.S. Dist. LEXIS 85169 (S.D.N.Y. Aug. 6, 2006) ................ 4

*DH Cattle Holdings Co. v. Smith,*
   195 A.D.2d 202, 607 N.Y.S.2d 227 (1st Dep't 1994) ........................ 14

*Dymm v. Cahill,*
   730 F. Supp. 1245 (S.D.N.Y. 1990) ..................................... 9 n4

*EBC I, Inc. v. Goldman, Sachs & Co.,*
   5 N.Y.3d 11, 799 N.Y.S.2d 170 (2005) ................................. 8, 19

*Eastman Kodak Co. v. Prometheus Funding Corp.,*
   283 A.D.2d 216, 724 N.Y.S.2d 736 (1st Dep't 2001) ....................... 8

*Ely-Cruikshank Co., Inc. v. Bank of Montreal,*
   81 N.Y.2d 399, 599 N.Y.S.2d 501 (1993) ............................... 6

*Feitshans v. Kahn,*
   06 Civ. 2125, 2006 U.S. Dist. LEXIS 68633 (S.D.N.Y. Sept. 21, 2006) ............. 4

*In re General Dev. Corp. Bond Litig.,*
   800 F. Supp. 1128 (S.D.N.Y. 1992) ..................................... 11

*Glamm v. Allen,*
   57 N.Y.2d 87, 453 N.Y.S.2d 674 (1982) ............................... 9 n5

*Gordon v. Dino De Laurentiis Corp.,*
   141 A.D.2d 435, 529 N.Y.S.2d 777 (1st Dep't 1988) ...................... 23

iv

*Greene v. Hanover Direct, Inc.,*
  06 Civ. 13308, 2007 U.S. Dist. LEXIS 87327 (S.D.N.Y. Nov. 21, 2007) ............................ 23

*Harsco Corp. v. Segui,*
  91 F.3d 337 (2d Cir. 1996) ................................................................................. 13, 21

*Highlands Ins. Co. v. PRG Brokerage, Inc,*
  01 Civ. 2272, 2004 U.S. Dist. LEXIS 83 (GBD) ................................................... 14

*Hughes v. J.P. Morgan Chase,*
  01 Civ. 6087 2004 U.S. Dist. LEXIS 11497 (S.D.N.Y. June 22, 2004) .................................. 9

*Hughes v. LaSalle Bank, N.A.,*
  419 F. Supp. 2d 605 (S.D.N.Y. 2006), *vacated and remanded on other grounds,*
  2007 U.S. App. LEXIS 26766 (2d Cir. Nov. 19, 2007) ........................................... 6

*Jorgensen v. Century 21 Real Estate Corp.,*
  217 A.D.2d 533, 629 N.Y.S.2d 268 (2d Dep't 1995) ............................................ 23

*Kaufman v. Eli Lilly & Co.,*
  65 N.Y.2d 449, 492 N.Y.S.2d 584 (1985) ........................................................... 5

*Kwan v. Schlein,*
  441 F. Supp. 2d 491 (S.D.N.Y. 2006) ................................................................ 6

*Laub v. Faessel,*
  297 A.D.2d 28, 745 N.Y.S.2d 534 (1st Dep't 2002) ......................................... 14, 24

*Leepson, PC v. Allan Riley Co.,*
  04 Civ. 3720, 2006 U.S. Dist. LEXIS 52875 (S.D.N.Y. July 31, 2006) ............................... 21

*Lentell v. Merrill Lynch & Co., Inc.,*
  396 F.3d 161 (2d Cir.), *cert. denied,* 546 U.S. 935 (2005) .................................... 20

*Lexington 360 Associates v. First Union Nat'l Bank of North Carolina,*
  234 A.D.2d 187, 651 N.Y.S.2d 490 (1st Dep't 1996) ............................................ 23

*Lipsky v. Commonwealth United Corp.,*
  551 F.2d 887 (2d Cir. 1976) .............................................................................. 20

*Logan-Baldwin v. L.S.M. Gen. Contractors, Inc.,*
  48 A.D.3d 1220, 851 N.Y.S.2d 327 (1st Dep't 2008) ............................................ 18

*In re Merrill Lynch & Co., Inc.,*
  273 F. Supp. 2d 351 (S.D.N.Y. 2003), *aff'd,* 396 F.3d 161 (2d Cir. 2005) ........................ 15

*Nairobi Holdings Ltd. V. Brown Bros. Harriman & Co.,*
    02 Civ. 1230, 2003 U.S. Dist. LEXIS 8065 (S.D.N.Y. May 14, 2003) ................................ 11

*Nasik Breeding & Research Ltd. v. Merck & Co., Inc.,*
    165 F. Supp. 2d 514 (S.D.N.Y. 2001) .................................................................................... 14

*Nat'l Commercial Bank, v. Morgan Stanley Asset Mgmt. Inc.,*
    94 Civ. 3167, 1997 U.S. Dist. LEXIS 15921 (S.D.N.Y. Oct. 15, 1997) ............................... 15

*Parlato v. Equitable Life Assur Soc. of U.S.,*
    299 A.D.2d 108, 749 N.Y.S.2d 216 (1st Dep't 2002) ........................................................... 10

*Pope v. Saget,* 29 A.D.3d 437,
    817 N.Y.S.2d 1 (1st Dep't 2006) ........................................................................................... 12

*In re QLT Inc. Sec. Litig.,*
    312 F. Supp. 2d 526 (S.D.N.Y. 2004) .................................................................................... 13

*Reding v. Goldman, Sachs & Co.,*
    382 F. Supp. 2d 1112 (E.D. Mo. 2005) ............................................................................ 19, 20

*Reznor v. J. Artist Mgmt., Inc.,*
    365 F. Supp. 2d 565 (S.D.N.Y. 2005) .................................................................................. 8, 9

*Rombach v. Chang,*
    355 F.3d 164 (2d Cir. 2004) ............................................................................................ 12, 13

*Rosa v. City Univ. of New York,*
    04 Civ. 9139, 2007 U.S. Dist. LEXIS 24549 (S.D.N.Y. Apr. 2, 2007) ................................... 4

*Roswick v. Mt. Sinai Med. Ctr.,*
    22 A.D.3d 409, 804 N.Y.S.2d 23 (1st Dep't 2005) ............................................................... 11

*Rothman v. Gregor,*
    220 F.3d 81 (2d Cir. 2000) ...................................................................................................... 4

*Ryan v. New York Tel. Co.,*
    62 N.Y.2d 494, 478 N.Y.S.2d 823 (1984) ............................................................................... 5

*Salzmann v. Prudential Secs., Inc.,*
    91 Civ. 4253, 1994 U.S. Dist. LEXIS 6377 (S.D.N.Y. May 16, 1994) ................................... 6

*Shields v. Cititrust Bancorp, Inc.,*
    25 F.3d 1124 (2d Cir. 1994) ................................................................................................... 18

*South Cherry St. LLC v. Hennessee Group LLC,*
    534 F. Supp. 2d 405 (S.D.N.Y. 2007) ................................................................................... 24

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank,*
  250 F.3d 87 (2d Cir. 2001) ................................................................................14

*Sun Micro Med. Techs. Corp. v. Passport Health Communications, Inc.,*
  06 Civ. 2083, 2006 U.S. Dist. LEXIS 87772 (S.D.N.Y. Dec. 4, 2006) .................21

*The RGH Liquidating Trust v. Deloitte & Touche LLP,*
  47 A.D.3d 516, 851 N.Y.S.2d 31 (1st Dep't 2008) .............................................16

*Transp. Workers Union v. Schwartz,*
  32 A.D.3d 710, 821 N.Y.S.2d 53 (1st Dep't 2006) ...............................................5

*Video Corp. of Am. v. Frederick Flatto Associates, Inc.,*
  85 A.D.2d 448, 448 N.Y.S.2d 498 (1st Dep't 1982) *mod. on other grounds,* 58
  N.Y.2d 1026, 462 N.Y.S.2d 439 (1983)................................................9 n4

*Water St. Leasehold LLC v. Deloitte & Touche LLP,*
  19 A.D.3d 183, 796 N.Y.S.2d 598 (1st Dep't 2005) ...........................................12

*Williamson v. PricewaterhouseCoopers LLP,*
  9 N.Y.3d 1, 840 N.Y.S.2d 730 (2007)................................................................10

*Zaref v. Berk & Michaels, P.C.,*
  192 A.D.2d 346, 595 N.Y.S.2d 772 (1st Dep't 1993) .........................................10

*Zumpano v. Quinn,*
  6 N.Y.3d 666, 816 N.Y.S.2d 703 (2006)............................................................11

## STATUTES

CPLR § 213 ...........................................................................................................5

Fed. R. Civ. P. 9(b).............................................................................................11

Fed R. Civ. P. 12(b)(6) ......................................................................................3, 4

N.Y. Gen. Bus. Law 352, et seq .....................................................................23, 24

## RULES

NASD Code of Arbitration Procedure, Rule 10304 .........................................1, 2, 3, 4

KL3 2648914.9

## PRELIMINARY STATEMENT

Ms. Griffin's untimely claims are back before this Court. Previously, on December 27, 2006, she brought an NASD arbitration against Goldman, Sachs & Co. ("Goldman"), Lehman Brothers Inc. ("Lehman"), and Ms. Frankel, the stockbroker who handled Ms. Griffin's brokerage account at Goldman from July 1999 until she left Goldman on December 30, 2000; Ms. Griffin followed Ms. Frankel to Lehman, and was a client of that firm until September 2004. Goldman and Ms. Frankel promptly moved this Court for a permanent stay of the arbitration as to them because the claims against them were time-barred. Ms. Griffin argued, and on May 16, 2007 this Court ruled, that the question whether the claims were time-barred was for the arbitrators, not this Court. On March 3, 2008, a three member FINRA panel of Arbitrators (the "Panel") issued an award that the claims against Goldman and Ms. Frankel "were time-barred under the six year FINRA Rule 10304 and dismissed those claims, without prejudice." On March 24, 2008, Mr. Griffin filed a Complaint in this Court, asserting the exact same claims against Goldman and Ms. Frankel.

Collateral estoppel bars plaintiff's claims. Since none of her claims has a statute of limitations that is longer than the six year limit in FINRA Rule 10304, all of those claims are also time-barred under the applicable New York statutes of limitations (see Point I herein). Even if collateral estoppel were not applicable, plaintiff's claims would still be time-barred (see Point II herein). Even if plaintiff's claims were not time-barred, they would have to be dismissed for failure to state a claim, (see Point III herein). Finally, if for some reason the Court does not dismiss the Complaint, the Court should send the parties back to arbitration (see Point IV herein).

1

## PROCEDURAL HISTORY AND THE COMPLAINT

Plaintiff alleges she filed her Statement of Claim with the NASD, now known as FINRA, on December 22, 2006. (Ex. A ¶ 10)[1]  On March 12, 2007, Goldman and Ms. Frankel moved for a permanent stay of the Arbitration on the ground that all of her claims against them were time-barred. (Ex. B)  Plaintiff opposed the motion on the ground that "there is no dispute about whether there is a binding contract, or whether that contract to arbitrate applies to the controversy" and " the parties waived their rights to seek remedies in court and agreed that any controversies would be submitted to arbitration . . . ." (Ex. C at 9, 11)  By Memorandum and Order dated May 16, 2007, this Court denied defendants' motion, holding that "the issue of whether respondent's claims are barred by any New York statute of limitations is for the arbitrator, not this Court." (Ex. D at 9)

In accordance with this Court's Order, the parties proceeded with the Arbitration. On November 5, 2007, Goldman and Ms. Frankel moved the Panel to dismiss plaintiff's claims because they are time-barred.  Defendants' motion was fully briefed by both sides.  Certain facts were (and remain) undisputed: (i) the last trade in plaintiff's Goldman account was on December 19, 2000 (Ex. H at 9), and (ii) Ms. Frankel left Goldman on or about December 30, 2000 (Ex. A ¶ 1).[2]  On January 30, 2008, the Panel heard oral argument on the motion to dismiss the Arbitration and granted the motion without prejudice, on the ground that the claims were time-barred under FINRA Rule 10304. (Ex. A ¶¶ 12, 13 n.1)  On March 3, 2008, the Panel issued a written award (the "Award"), which described the extensive arguments made by both

---

[1]  Unless otherwise noted, all references to Exhibits are to the exhibits to the June 3, 2008 Declaration of Michael J. Dell.

[2]  It is also undisputed that Ms. Griffin's account increased in value between December 22, 2000, six years before the date when she claims she filed her Statement of Claim, and January 18, 2001, when she followed Ms. Frankel to Lehman.

2

sides and confirmed that "[t]he Panel found that consideration of the claims against Respondents Goldman and Frankel were time-barred under FINRA Rule 10304 and dismissed those claims, without prejudice." (Ex. E at 3, 4)  The Award also notes that plaintiff "dismissed, with prejudice" her claims against Lehman and Ms. Frankel "for the time period she was employed by Lehman." (*Id.* at 3)

On March 24, 2008, plaintiff filed her Complaint, which is virtually identical to her Statement of Claim. The principal changes are those required for a filing in this Court, deletion of her now-settled allegations against Lehman, and a few revisions to the factual allegations. (Exs. F, G)  Plaintiff alleges that (a) at an "initial meeting" in July 1999 *before* she opened her account, Ms. Frankel made misstatements about her education, prior performance and that she would invest plaintiff's money like her own, (b) "at all times" defendants represented that Ms. Frankel "was a knowledgeable, experienced broker" and "had Plaintiff's best interests at heart," (c) between July 1, 1999 and June 20, 2000 Goldman analysts made false statements in "numerous reports recommending the purchase of tech stocks," (d)  in October 1999 defendants failed to disclose a conflict of interest in connection with the sale of 3,000 shares of eToys, (e) Ms. Frankel made numerous transactions without first discussing them with plaintiff, told others at Goldman that she had prior authorization from her customers and made backdated entries to reflect such discussions, and (f) Ms. Frankel "had a practice of holding losses while taking profits." (Ex. A ¶¶ 32(i)-(xi))

## ARGUMENT

On this Fed R. Civ. P. 12(b)(6) motion to dismiss, this Court must "'must accept as true all of the factual allegations contained in the complaint.'" *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1975 (2007)  But mere "formulaic recitation of the elements of a cause of action" will not suffice; "[f]actual allegations must be enough to raise a right to relief

above the speculative level." *Id.* at 1965. To survive a motion to dismiss, courts require "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

        The Court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000). Those documents include plaintiff's account statements and account agreement. *See, e.g., Bissell v. Merrill Lynch & Co., Inc.*, 937 F. Supp. 237, 239 n.1 (S.D.N.Y. 1996) (considering plaintiff's account statements and margin agreement on motion to dismiss). Dismissal is appropriate under Rule 12(b)(6) if the facts clearly demonstrate that plaintiff's claims are barred by collateral estoppel, *see Rosa v. City Univ. of New York*, 04 Civ. 9139 (KMW), 2007 U.S. Dist. LEXIS 24549, *6 (S.D.N.Y. Apr. 2, 2007); *Feitshans v. Kahn*, 06 Civ. 2125 (SAS), 2006 U.S. Dist. LEXIS 68633, *2 (S.D.N.Y. Sept. 21, 2006), or are time-barred, *see Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002). When a motion to dismiss is premised on collateral estoppel, the court is permitted to take judicial notice of and consider the complaints and the record in both actions without having to convert the motion to dismiss into a summary judgment motion. *See Drance v. Citigroup*, 05 Civ. 0001 (RCC) (KNF), 2006 U.S. Dist. LEXIS 85169 (S.D.N.Y. Aug. 6, 2006).

# I.    PLAINTIFF'S CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL

        This Court previously ruled that the issue of whether plaintiff's claims are time-barred should be decided by the Panel. The Panel then determined that plaintiff's claims are "time-barred" under FINRA Rule 10304, which states that "[n]o dispute, claim, or controversy shall be eligible for submission to Arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy." Ex E at 4; NASD Code of Arbitration Procedure, Rule 10304(a). Because the Panel *necessarily* found that

KL3 2648914.9

more than six years elapsed from the occurrence or event giving rise to plaintiff's claims before she commenced the Arbitration, plaintiff is now collaterally estopped from relitigating this issue. *See Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455, 492 N.Y.S. 2d. 584, 588 (1985); *Ryan v. New York Tel. Co.*, 62 N.Y.S.2d 494, 500, 478 N.Y.S.2d 823, 826 (1984). Decisions of arbitrators have the same preclusive effect as court decisions. *See, e.g., Am. Ins. Co. v. Messinger*, 43 N.Y.2d 184, 187, 401 N.Y.S.2d 36, 37 (1977); *Active Media Services, Inc. v. Grant Prideco, Inc.*, 35 A.D.3d 165, 826 N.Y.S.2d 889 (1st Dep't 2006) (collateral estoppel effect of prior arbitration precluded plaintiff from relitigating its claims).

All three of plaintiff's state law causes of action are therefore time-barred, because their statutes of limitations are all six years or less. New York's statutes of limitations for fraud and breach of contract are six years. CPLR § 213.[3] A breach of fiduciary duty claim that seeks money damages, like Ms. Griffin's here, is governed by a three-year statute of limitations. *See, e.g., Transp. Workers Union v. Schwartz*, 32 A.D.3d 710, 714 n.3, 821 N.Y.S.2d 53, 57 n.3 (1st Dep't 2006); *Carlingford Ctr. Point Associates v. MR Realty Associates*, 4 A.D.3d 179, 180, 772 N.Y.S.2d 273, 274 (1st Dep't 2004).

Indeed, plaintiff's Complaint is even more untimely than her Statement of Claim, because she filed her Complaint 15 months later, on March 24, 2008. While New York's CPLR 204(b) tolls limitations periods where "a party is not obligated to submit a claim to arbitration," Ms. Griffin has already expressly acknowledged to this Court that she *was* obligated to submit her claim to arbitration: "there is no dispute about whether there is a binding contract, or whether that contract to arbitrate applies to the controversy," and "the parties waived their rights

---

[3] New York law applies not only because plaintiff's agreements with Goldman provide that her claims are governed by New York law, but also because plaintiff states that the conduct alleged in her Complaint occurred in New York. (Ex. A ¶ 9)

5

to seek remedies in court and agreed that *any* controversies would be submitted to arbitration

. . . ." (Ex. C at 9, 11)  Moreover, this Court previously upheld that argument. (Ex. D)

## II.    EVEN IF PLAINTIFF'S CLAIMS WERE NOT BARRED BY COLLATERAL ESTOPPEL THEY WOULD BE TIME-BARRED

Even if this Court did not give collateral estoppel effect to the Panel's Award,

plaintiff's claims would be time-barred.  Her breach of contract cause of action accrued under

New York law at the time of the breach even if no damage occurred until later.  *See Ely-*

*Cruikshank Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 399, 402-03, 599 N.Y.S.2d 501, 502-03

(1993) (statute of limitations for breach of contract ran even though plaintiff was unaware of the

breach when it occurred).  Similarly, "a cause of action for a breach of fiduciary duty under New

York law accrues upon the occurrence of the alleged wrongful act." *Salzmann v. Prudential*

*Secs., Inc.*, 91 Civ. 4253 (KTD), 1994 U.S. Dist. LEXIS 6377, *20 (S.D.N.Y. May 16, 1994)

(three-year statute of limitations barred breach of fiduciary duty claim premised on unsuitability

of investments where last security purchase occurred more than three years before the complaint

was filed); *see also Hughes v. LaSalle Ban*k, N.A., 419 F. Supp. 2d 605, 612-13 (S.D.N.Y. 2006)

(breach of fiduciary duty claim "accrued" on the date the allegedly improper investment was

made; "continuation until today of [investment manager's alleged wrongdoing by continuing to

hold the challenged investments] does not toll the limitations period"), *vacated and remanded on*

*other grounds,* 2007 U.S. App. LEXIS 26766 (2d Cir. Nov. 19, 2007).  Finally, "[a] fraud claim

accrues at the time the fraud is committed, i.e. at the time the defendant makes a knowingly false

statement of fact with the intent to induce reliance on that statement." *Kwan v. Schlein,* 441 F.

Supp. 2d 491, 504 (S.D.N.Y. 2006).

As noted at page 3 above, all the factual allegations underlying plaintiff's claims

concern either (a) representations Ms. Frankel supposedly made at her "*initial meeting*" with

6

plaintiff before she even opened her account, (b) representations defendants purportedly made at subsequent times before Ms. Frankel left Goldman, and (c) *transactions* in plaintiff's account before Ms. Frankel left Goldman. According to plaintiff, the "initial meeting" occurred in or before July 1999 (Ex. A ¶ 16), well over seven years before plaintiff alleges she filed the Arbitration on December 22, 2006 (*id.* ¶ 10) and more than eight years before she filed her Complaint in March 2008. Moreover, the other representations were allegedly made more than six years before she filed her Statement of Claim and more than seven years before she filed her Complaint. Finally, since the last trade in plaintiff's account at Goldman occurred on December 19, 2000 (Ex. H at 9), all of her claims based on the *transactions* in her account became time-barred as of December 19, 2006.

### A.    The "Continuous Representation" Doctrine Does Not Apply Here

Plaintiff may argue, as she did to the Panel, that the doctrine of "continuous representation" tolls the statutes of limitations. It does not, for two independent reasons: (i) New York state courts have not extended this limited doctrine to stockbrokers such as Ms. Frankel; and (ii) even if the doctrine were extended to stockbrokers, it would not apply to a general relationship, like that between Ms. Griffin and defendants, which was comprised of a series of discrete and severable transactions.

#### 1.    The Continuous Representation Doctrine Does Not Apply to Brokers Such As Ms. Frankel

The continuous representation doctrine arose out of the continuous treatment doctrine in medical malpractice cases. *See Borgia v. City of New York,* 12 N.Y.2d 151, 155, 237 N.Y.S.2d 319, 320 (1962). It applies *only* to professionals who can be sued for malpractice. For example, in declining to apply the doctrine to a business manager, Judge Rakoff explained that "this doctrine only applies to malpractice claims against professionals, such as doctors, attorneys

7

or accountants, who in return are subject to a special three-year limitations period for all claims. N.Y. C.P.L.R. § 214(6)." *Reznor v. J. Artist Mgmt., Inc.* 365 F. Supp. 2d 565, 579 n.15 (S.D.N.Y. 2005). Similarly, in holding the continuous treatment doctrine did not apply to actuaries, the New York Appellate Division ruled "the plaintiff may not rely upon the doctrine of continuous representation, which tolls malpractice claims against those professional groups which are within the scope of CPLR 214(6)." *Castle Oil Corp. v. Thompson Pension Employee Plans, Inc.*, 299 A.D.2d 513, 514, 750 N.Y.S.2d 629, 631 (2d Dep't 2002); *see also Eastman Kodak Co. v. Prometheus Funding Corp.,* 283 A.D.2d 216, 216, 724 N.Y.S.2d 736, 737 (1st Dep't 2001) ("the continuous representation doctrine is not applicable to insurance brokers and they are not professionals within the meaning of CPLR 214(6).").

Since stockbrokers, such as Ms. Frankel, are also not within the scope of CPLR 214(6), the continuous representation doctrine does not apply to them either. Indeed, if Goldman and Ms. Frankel were professionals under that section, plaintiff's breach of contract claim against them would be subject to the three-year statute of limitations for professional malpractice, and not the six-year statute plaintiff seeks to assert. While the New York Court of Appeals stated in 2005 that it is an "open" question whether a "financial advisor . . . may ever be treated as a professional" for malpractice purposes, *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 23, 799 N.Y.S.2d 170, 177 (2005), it has also emphasized that a "professional" must "engage in extensive specialized education and training." *Chase Scientific Research v. NIA Group, Inc.*, 96 N.Y.2d 20, 30, 725 N.Y.S.2d 592, 598 (2001). As Judge Rakoff has found, "[c]ourts consistently have rejected extension of the continuous representation doctrine to occupations that do not fit easily into [*Chase Scientific*'s] narrow definition of a professional."

8

*Reznor*, 365 F. Supp. 2d at 579 n.15.  Plainly, a stockbroker, who does not even need a college

degree, does not "fit easily" into the category of professional as defined by New York law.[4]

### 2.  Even if the Continuous Representation Doctrine Could Apply to Stockbrokers, It Would Not Toll the Statute of Limitations Here

Extending the continuous representation doctrine to stockbrokers would be

inconsistent with precedent and the policy consideration behind that doctrine.[5]  But even if it

were to be so extended, it still would not help plaintiff, because courts consistently reject its

application where the representation concerns discrete and severable transactions.  The doctrine

"tolls the running of the statute of limitations on a claim arising from the rendition of

professional services only so long as defendant continues to advise the client 'in connection *with*

*the particular transaction* which is the subject of the action and not merely during *the*

*continuation of a general professional relationship*.'"  *Booth v. Kriegel*, 36 A.D.3d 312, 314, 825

N.Y.S.2d 193, 195 (1st Dep't 2006) (emphasis added).  "[T]he pleading must assert more than

---

[4]  To the extent *Hughes v. J.P. Morgan Chase*, 01 Civ. 6087 (BSJ), 2004 U.S. Dist. LEXIS 11497 (S.D.N.Y. June 22, 2004), and *Dymm v. Cahill*, 730 F. Supp. 1245, 1264 (S.D.N.Y. 1990), have a contrary holding, they were wrongly decided.  *Hughes* ruled that *Chase Scientific's* holding that CPLR 214(6), New York's professional malpractice statute of limitations, applies only to occupations whose members "engage in extensive specialized education and training," was irrelevant to the application of the continuous representation doctrine.  *Hughes*, 2004 U.S. Dist. LEXIS 11497, *13 n.10.  That is incorrect because, as noted above, the continuous representation doctrine applies only to professionals to whom CPLR 214(6) applies.  Thus, the New York Court of Appeals' construction in *Chase Scientific* of what occupations the legislature intended to include among such "professionals" is key.  *Hughes* has never been cited by any other court on this point.  *Dymm* provides an equally unpersuasive basis for extending the continuous representation doctrine.  The Court ruled that whether the relationship of an accountant who served as an investment advisor to the plaintiff "was sufficient to merit application of the continuing relationship doctrine, should be the subject of later proof."  730 F. Supp. at 1264.

5  The policy consideration behind the doctrine is that a client or patient who is being represented or treated by a lawyer or doctor with specialized professional skills "realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered" and "[n]either is a person expected to jeopardize his pending case or his relationship with the attorney handling that case during the period that the attorney continues to represent the person."  *Glamm v. Allen*, 57 N.Y.2d 87, 93, 453 N.Y.S.2d 674, 677 (1982).  These concerns do not apply to a stockbroker, because clients do assess the results they produce at all times (it is undisputed that Ms. Griffin received monthly statements showing how her account had performed, e.g. Ex. H) and are always free to switch brokers.  In declining to extend the doctrine to insurance brokers, the Appellate Division reasoned that, "[u]nlike a recipient of the services of a doctor, attorney or architect, as to whom the doctrine has been applied, the recipient of the services of an insurance broker is not at a substantial disadvantage to question the actions of the provider of services."  *Video Corp. of Am. v. Frederick Flatto Associates, Inc.*, 85 A.D.2d 448, 456, 448 N.Y.S.2d 498, 504 (1st Dep't 1982), *mod. on other grounds*, 58 N.Y.2d 1026, 462 N.Y.S.2d 439 (1983).  That conclusion is equally applicable to a stockbroker.

simply an extended general relationship between the professional and client in that the facts are required to demonstrate continued representation in the specific matter under dispute." *Zaref v. Berk & Michaels, P.C.*, 192 A.D.2d 346, 348, 595 N.Y.S.2d 772, 774 (1st Dep't 1993); *accord Bastys v. Rothschild*, 97 Civ. 5154 (MGA), 2000 U.S. Dist. LEXIS 17944, *87 (S.D.N.Y. Nov. 20, 2000). "[W]here a professional advises a client in a 'series of discrete and severable transactions,'" "the performance of services in each successive transaction does not serve to toll the running of the statute of limitations on any claim arising from the prior transaction." *Booth*, 36 A.D.3d at 314, 825 N.Y.S.2d at 195. *See also Williamson v. PricewaterhouseCoopers LLP*, 9 N.Y.3d 1, 10-11, 840 N.Y.S.2d 730, 735-36 (2007) (a series of annual engagements for year-end audits did not constitute continuous representation).

   *Parlato v. Equitable Life Assur Soc. of U.S.*, 299 A.D.2d 108, 749 N.Y.S.2d 216 (1st Dep't 2002), is instructive. There, the plaintiffs argued that the statute of limitations should be tolled until they stopped using the defendant as their financial advisor. The court rejected that argument because the financial advisor's "advice related to a series of discrete and severable transactions." *Parlato*, 299 A.D.2d at 115, 749 N.Y.S.2d at 222. Similarly, in *Zaref*, the plaintiff alleged "defendants' general and unfettered control of their financial, tax, and investment affairs", but failed to allege facts sufficient to show how later financial planning decisions were related to earlier purchases; the complaint was therefore "insufficient to sustain the timeliness of any transactions completed more than three years prior to the commencement of this lawsuit . . . ." *Zaref*, 192 A.D.2d at 348, 595 N.Y.S. 2d at 774. Here too, unlike a course of medical treatment or a legal representation in a lawsuit, each investment decision by Ms. Frankel for plaintiff's Goldman account was a discrete and severable transaction. Therefore, each subsequent transaction did not toll the statute of limitations concerning prior purchases or sales.

KL3 2648914.9

### B.    The Doctrine of Fraudulent Concealment Is Inapplicable Here

Plaintiff's Complaint refers, in a conclusory fashion, to "the Defendants' improper actions in efforts to cover up the fraudulent acts and to keep Plaintiff from learning of the common law fraud Frankel committed upon her." (Ex. A ¶ 4)  That is utterly insufficient to allege fraudulent concealment sufficient to toll the applicable New York limitations periods. Fed. R. Civ. P. 9(b) requires that facts supporting fraudulent concealment must be pled with particularity. *See, e.g., Nairobi Holdings Ltd. V. Brown Bros. Harriman & Co.*, 02 Civ. 1230 (LMM), 2003 U.S. Dist. LEXIS 8065, *14 (S.D.N.Y. May 14, 2003).  Plaintiff must "establish that subsequent and specific actions by defendants somehow kept [him or her] from timely bringing suit" *Zumpano v. Quinn*, 6 N.Y.3d 666, 674, 816 N.Y.S.2d 703, 706 (2006) (affirming dismissal of claims as time-barred).  As this Court ruled in *In re General Dev. Corp. Bond Litig.*, 800 F. Supp. 1128, 1142 (S.D.N.Y. 1992) (McKenna, J.), an allegation of fraudulent concealment "must include specific details of activities undertaken by the defendant to keep an already completed fraud from being discovered."  It is not enough for plaintiffs to "purport to demonstrate active concealment through a reiteration of the same list of representations and omissions. . . that is alleged to constitute the fraud itself." *Id.* at 1143.  Thus, New York courts consistently dismiss time-barred claims where, as here, there are no allegations of fraudulent concealment apart from the allegations that gave rise to the causes of action. *See, e.g., Roswick v. Mt. Sinai Med. Ctr.*, 22 A.D.3d 409, 410, 804 N.Y.S.2d 23, 24 (1st Dep't 2005) (affirming summary judgment dismissing complaint where plaintiff made "no allegations of intentional fraudulent concealment apart from the alleged malpractice.").

KL3 2648914 9

## III.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM

### A.    Plaintiff Fails To State A Claim For Fraud

To state a claim for fraud under New York law, a plaintiff must allege: "a representation of material fact, the falsity of that representation, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury." *Pope v. Saget*, 29 A.D.3d 437, 441, 817 N.Y.S.2d 1, 3(1st Dep't 2006). *see also Water St. Leasehold LLC v. Deloitte & Touche LLP*, 19 A.D.3d 183, 185, 796 N.Y.S.2d 598, 599-600 (1st Dep't 2005) ("'[p]laintiff must show . . . that defendant's misrepresentation induced plaintiff to engage in the transaction in question"). The pleading must satisfy Rule 9(b), which requires "that a complaint (alleging fraud) '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). Plaintiff's fraud allegations do not come close to meeting these requirements.

### 1.    Plaintiff Fails To State A Claim For Fraud Based On Statements At The "Initial Meeting"

Plaintiff alleges that at her initial meeting with Ms. Frankel, Ms. Frankel used "materially false and misleading Charts," falsely stated that "she had a Ph.D" and falsely stated that "she would invest plaintiff's money like it was her own." None of these allegations can support a claim for fraud, for several reasons.

*First*, plaintiff's mere repetition of the allegation that Ms. Frankel's performance charts were "false" or "fraudulent" is insufficient to allege a material misrepresentation. (*See* Ex. A ¶¶ 1, 2, 17, 18, 32(iv)) Indeed, plaintiff's allegations are inconsistent with the charts she attaches to her Complaint -- she asserts that "the claimed 'portfolio' for a 'GS Team' was a

12

fiction" (*id.* ¶ 18), but the charts themselves explicitly state they depict a "composite," not a single actual portfolio. (Ex. A to Ex. A, at 1)  Since plaintiff does not provide any explanation as to why the "portfolio" is a "fiction," this allegation cannot form the basis of a fraud claim. *See, e.g., Harsco Corp. v. Segui*, 91 F.3d 337, 347-48 (2d Cir. 1996) (affirming dismissal of fraud claim where complaint gave "no explanation regarding why that representation may be fraudulent"); *In re Allied Capital Corp. Sec. Litig.*, 02 Civ. 3812 (GEL), 2003 U.S. Dist LEXIS 6962, *11-*12 (S.D.N.Y. Apr. 25, 2003) (complaint that merely "states plaintiffs' opinion" that defendants' statements were false, without offering the reasons for that opinion, does not state a claim for securities fraud).

Plaintiff's other allegations are no better.  She baldly states "there was no such actual past performance" as that depicted in the charts (Ex. A ¶ 18) and that "Frankel did not include the performance of certain non-discretionary accounts (plural) in compiling the Charts." (*Id.*)  But it is insufficient to state "conjecture as an indisputable conclusion." *In re QLT Inc. Sec. Litig.*, 312 F. Supp. 2d 526, 535-36 (S.D.N.Y. 2004) (dismissing securities fraud claim because "a bald assertion of falsity . . . is deficient"); *see also Rombach*, 355 F.3d at 175 ("plaintiffs cannot rest on their say-so that these statements are fraudulent; they must explain why").  In addition, the charts do not represent that non-discretionary accounts are included.

*Second*, plaintiff does not adequately allege that the supposed misstatements in the charts were material.  Information is material "if there is 'a substantial likelihood that'" it "'would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'" *Acito v. Imcera Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995).  Here, plaintiff alleges that "the number of accounts" used in Ms. Frankel's composite and "the performance figures" (Ex. A ¶ 18) were false.  But she does not allege why the "number of

accounts", or the absence of non-discretionary accounts (when her account was discretionary), in

Ms. Frankel's composite would affect her decision to open an account.

Similarly, plaintiff's allegation that Ms. Frankel told her she had a Ph.D. cannot

support a fraud claim because plaintiff fails to allege that this credential was material to her

decision to open an account with Ms. Frankel. And plaintiff's allegation that Ms. Frankel stated

she would invest plaintiff's money like it was her own is simply not the kind of allegation that

can form the basis of a fraud claim. Such statements are called "puffery" and courts consistently

dismiss fraud claims based on such statements. *See Highlands Ins. Co. v. PRG Brokerage, Inc.*,

01 Civ. 2272, 2004 U.S. Dist. LEXIS 83, *13 (GBD) ("to the extent that defendants made

statements that they had expertise in the field of livery car insurance, this again is nothing more

than puffery, and is not actionable."); *Nasik Breeding & Research Ltd. v. Merck & Co., Inc.*, 165

F. Supp. 2d 514, 530 (S.D.N.Y. 2001) ("[t]erms like 'very high productive traits' . . . are in the

nature of commercial puffery and cannot form the basis for a fraud claim here"); *DH Cattle*

*Holdings Co. v. Smith*, 195 A.D.2d 202, 208, 607 N.Y.S.2d 227, 231 (1st Dep't 1994)

(statements that an investment was "a safe investment" are considered, "not actionable

statements of fact, but mere opinion and puffery").

*Third*, plaintiff fails to allege any facts suggesting that the purported

misstatements proximately caused her injury, which is another essential element of a fraud claim.

*Laub v. Faessel*, 297 A.D.2d 28, 30, 745 N.Y.S.2d 534, 536 (1st Dep't 2002). "The loss

causation inquiry typically examines how directly the subject of the fraudulent statement caused

the loss, and whether the resulting loss was a foreseeable outcome of the fraudulent statement;"

relevant factors include the presence of "intervening causes" and "the lapse of time between the

fraudulent statement and the loss." *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250

F.3d 87, 96 (2d Cir. 2001).

14

Here, plaintiff opened her account with Ms. Frankel -- allegedly in reliance upon the supposedly fraudulent charts and the Ph.D. -- in July 1999. Plaintiff remained a customer of Ms. Frankel at Goldman until December 2000. During that time, as the courts have recognized, there was an important intervening cause -- the technology and internet bubble burst, leading to an overall decline in the stock market. *See In re Merrill Lynch & Co., Inc.*, 273 F. Supp.2d 351, 365 (S.D.N.Y. 2003), *aff'd*, 396 F.3d 161 (2d Cir. 2005). Plaintiff's position is thus very similar to that of the plaintiff in *Nat'l Commercial Bank, v. Morgan Stanley Asset Mgmt. Inc.*, 94 Civ. 3167 (DC), 1997 U.S. Dist. LEXIS 15921 (S.D.N.Y. Oct. 15, 1997). There, the plaintiff opened an account with the defendants, allegedly in reliance upon fraudulent statements, and, six months after the account was opened, the account suffered large losses due to market-wide fluctuations in interest rates. *Id.* at \*21. *National Commercial Bank* ruled that:

> No reasonable jury could conclude that August 1993 losses were the "natural and probable consequences" of the . . . statements purportedly made from September 1992 until February 1993 that induced [plaintiff] to open the [account] and put it in defendants' hands. While it is obvious that the losses would not have been sustained if the [account] had not been opened, it is equally clear that intervening causes occurring several months after the Account was opened broke the causal connection between the [alleged statements] and the August 1993 losses.

*Id.* This reasoning applies to plaintiff's "charts" and Ph.D. claims. An "intervening cause" – the general decline in the value of technology stocks that started in April 2000 -- "broke the causal connection" between any supposed fraud connected with the opening of her account and her eventual losses. For this reason as well, plaintiff's "charts" and Ph.D. claims must be dismissed.

2.    **Plaintiff Fails To State A Claim For Fraud Based On Transactions In Her Account Or "Holding Losses While Taking Profits"**

Plaintiff's allegations about the transactions in her account (Ex. A ¶ 32 (v), (vii), (viii), (vix) and (xi)) also cannot form the basis of a fraud claim.

*First*, plaintiff does not allege that defendants made *any* misrepresentations to her in connection with any transaction in her account. While, plaintiff alleges that Ms. Frankel made transactions in her discretionary account "without first discussing them with Plaintiff" (Ex. A ¶ 32(v)), that Ms. Frankel told others *at Goldman* that she had "obtained prior authorization" for certain of those purchases (*id.* ¶ 32(viii), *see also id.* ¶¶ 32(vii), (vix)) and that she "had a practice of holding losses while taking profits" (*id.* ¶ 32(xi)), none of those allegations sets forth any misrepresentation *to plaintiff*, much less any misrepresentation on which plaintiff relied.

The closest plaintiff comes to alleging a misrepresentation *to her* in connection with the transactions in her account is her allegation that Ms. Frankel "falsely represented to Plaintiff her investment philosophy and practice." (Ex. A ¶ 32(xi))  But that allegation falls far short of what is required to sustain a fraud claim. Plaintiff does not even disclose what Ms. Frankel supposedly said about her investment philosophy or practice, why that undefined statement was false, much less when or where she said it, or how plaintiff relied on it. In short, none of plaintiff's allegations about the transactions in her account alleges the essential element of a misrepresentation.

*Second*, all of plaintiff's allegations about the transactions in her account detail alleged flaws in Goldman's performance of its agreements with her and are therefore duplicative of her breach of contract claim. "It is black letter law in New York that a claim for common law fraud will not lie if the claim is duplicative of a claim for breach of contract." *Clifton v. Vista Computer Services LLC*, 01 Civ. 10206 (JSM), 2002 U.S. Dist. LEXIS 12977, *4 (S.D.N.Y. July 16, 2002) (dismissing fraud claim); *see also The RGH Liquidating Trust v. Deloitte & Touche LLP*, 47 A.D.3d 516, 516, 851 N.Y.S.2d 31, 32 (1st Dep't 2008) (fraud claims were properly dismissed as duplicative of breach of contract claim where they were based on

16

misrepresentations related to defendants' obligations under their agreement with plaintiff). To maintain a fraud claim alongside a breach of contract claim, a plaintiff must:

> (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). Plaintiff's allegations about the transactions in her account do not satisfy these elements. Plaintiff simply details Goldman's and Ms. Frankel's alleged failure properly to perform under Goldman's Account Agreement with plaintiff. (*See* Ex. A ¶¶ 32(i), (ii), (iii), (v), (vi), (vii), (viii), (vix), (x), (xi), 33)  With the exception of Ms. Frankel's alleged misrepresentations at the "initial meeting," which plaintiff alleges induced her to enter into the Account Agreement, the conduct alleged -- such as "holding losses while taking profits in Plaintiff's Goldman Sachs Account" -- concerns Goldman's duties under the Account Agreement.

Furthermore, plaintiff cannot evade the bar on fraud claims that duplicate a contract claim by suing Goldman's employee. In *Borges v. Entra Am., Inc.,* No. 722/06, 18 Misc. 3d 134(A), 2008 N.Y. Misc. LEXIS 235, *2 (Sup. Ct. App. Term N.Y. Co. Jan. 29, 2008), for example, the court granted a motion to dismiss fraud and breach of contract claims against the president of the corporate defendant because (1) plaintiff did not allege the president "intended to be personally bound by the contract between plaintiff and the corporation," and (2) "the proposed fraud cause of action was palpably insufficient inasmuch as plaintiff failed to allege that [the president] breached any duty owed to him separate and apart from the alleged contractual obligations between plaintiff and the corporate defendant. *See also Rivas v. Amerimed, USA, Inc.*, 34 A.D.3d 250, 250, 824 N.Y.S.2d 41, 42 (1st Dep't 2006) (affirming dismissal of fraud claim against directors of corporation who were not party to plaintiffs'

17

contract with the corporation, because plaintiffs failed to allege the individual defendants

"breached any duty owed to [plaintiffs] separate and apart from the alleged contractual

obligations [of the corporation nor did] they claim any special damages proximately caused by

the false representation not recoverable under the contract measure of damages"); *Logan-*

*Baldwin v. L.S.M. Gen. Contractors, Inc.,* 48 A.D.3d 1220, 1221, 851 N.Y.S.2d 327, 328 (1st

Dep't 2008) (affirming dismissal of fraud claim against president of a corporation that entered

into a contract with plaintiffs because "[i]t is well established that a separate cause of action for

fraud is not stated where, as here, the alleged fraud relates to the breach of contract"). Plaintiff's

fraud claim should therefore be dismissed because it is duplicative of her breach of contract

claim.

### 3.    Plaintiff Fails To State A Claim For Fraud Based On "Analyst Reports" And eToys

Plaintiff alleges that "Goldman Sachs analysts made false statements in their

numerous reports recommending the purchase of 'tech' stocks." (Ex. A ¶ 32(vi))  Plaintiff

claims she "lost $70,470 in two specific stocks, WorldCom and Global Crossing, listed in the

settlement Goldman Sachs made" with the SEC and the New York State Attorney General. (*Id.*

¶ 22)  Plaintiff also alleges that Goldman "failed to disclose" a conflict of interest involving

eToys, Inc. and that she "lost approximately $137,940" on her investment in that company. (*Id.*

¶¶ 32(x), 23)  These allegations do not even come close to stating a fraud claim.

*First,* as set forth above, it is a *sine qua non* of every fraud claim that the

complaint must "specify the statements that the plaintiff contends were fraudulent." *Shields v.*

*Cititrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994).  Here, plaintiff does not identify even

a *single analyst report*, much less any statement in any analyst report that she alleges was

fraudulent or why any such statement was false.  Such allegations are insufficient to state a fraud

18

claim. *See Reding v. Goldman, Sachs & Co.*, 382 F. Supp. 2d 1112, 1118 (E.D. Mo. 2005) (dismissing fraud claims based on Goldman analyst reports where the plaintiff did not identify any false statements in analyst reports or even which reports contained false statements, or demonstrate why the statements were false). Plaintiff's effort to create a fraud claim out of the allegations in *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 18, 799 N.Y.S.2d 170, 173-74 (2005), similarly fails. That decision described an alleged conflict that gave Goldman "an incentive to advise eToys to *underprice* its stock" (emphasis added) in the May 1999 IPO; it cannot support plaintiff's claim that Goldman caused eToys stock to be *overpriced* when she bought it five months later in October 1999. (Ex. A ¶¶ 23, 32(x))

  *Second*, plaintiff does not plead fraudulent intent. With regard to the analysts' reports and the alleged eToys conflict of interest, plaintiff does not allege a single fact suggesting that anyone at Goldman acted with the requisite degree of intent. *See Reding*, 382 F. Supp. 2d at 1119 (dismissing fraud claims based on Goldman analyst reports where plaintiff did not allege how Goldman knew anything in the reports was false or misleading).

  Nor can plaintiff's allegation that she purchased stocks "listed in the settlement Goldman Sachs made" cure these pleading defects. Goldman did enter into settlement agreements with regulators relating to its research practices (the "Settlement Agreements"). And Goldman, like most Wall Street firms, did investment banking business with certain companies for which Goldman also issued research reports. However, the Settlement Agreements specifically state that Goldman was not admitting "any of the allegations, facts, conclusions or findings." Furthermore, unlike two of the other Wall Street firms that entered into separate settlement agreements with regulators, Goldman was not charged with fraud. The Settlement Agreements, moreover, have no bearing on plaintiff's claims. The Settlement Agreements involved allegations of conflicts of interest between Goldman's investment banking and research

19

departments; nothing in them even suggests that there was wrongdoing by any individual *broker*, let alone by Ms. Frankel. Thus, the Settlement Agreements provide no support for plaintiff's claims -- they are simply irrelevant. *See Reding*, 382 F. Supp. 2d at 1118 (dismissing fraud claims based on SEC complaint underlying Settlement Agreements; SEC complaint alleged conflicts of interest, not fraud). Furthermore, consent orders, such as the Settlement Agreements, are inadmissible to prove liability in a subsequent case, such as this one. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

   *Third*, plaintiff fails to allege loss causation with respect to the analyst reports or alleged eToys conflict of interest. Plaintiff does not allege facts that show that any losses she sustained in certain stocks at Goldman were caused by the matters at issue in the Settlement Agreements or an alleged eToys conflict of interest. She certainly fails to offer anything that suggests that Goldman, as opposed to the collapse in the stock market in general and technology stocks in particular, caused her losses. Indeed, she is in the same position as the plaintiffs in *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir.), *cert. denied,* 546 U.S. 935 (2005), a class action that also attempted to piggyback fraud claims on comparable settlement agreements. In affirming dismissal of the claims, the Second Circuit explained that "'when the plaintiff's loss coincides with a marketwide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by the fraud decreases.'" *Lentell*, 396 F.3d at 174; *see also Reding*, 382 F. Supp. 2d at 1119 (dismissing fraud claims based on analyst reports where plaintiffs "fail to detail how the reports inflated the market price of the securities or how the reports caused a decrease in the value/price of the subject securities").

KL3 2648914.9

**4.    Plaintiff Fails To State A Claim For Fraud Based On Allegations That Ms. Frankel Represented She Was A Knowledgeable, Experienced Broker And Had Plaintiff's Best Interests At Heart**

Finally, plaintiff pads her Complaint with allegations that "[a]t all times," Ms. Frankel represented that she "was a knowledgeable, experienced broker" and "had Plaintiff's best interests at heart." (Ex. A ¶¶ 32(i), (ii)) These allegations cannot support a claim for fraud for two reasons.

*First,* as set forth above, statements like these are considered "puffery" and are not actionable. *See* cases cited at pp. 14. *Second,* plaintiff does not allege any facts suggesting that Ms. Frankel was *not* a knowledgeable and experienced broker or that she did *not* have plaintiff's best interest at heart. On the contrary, plaintiff herself alleges that Ms. Frankel had been employed by Goldman as a broker beginning in 1994 and that both Goldman and Lehman presented her as a "'star' broker who would produce exceptional results for her customers' accounts." (Ex. A ¶ 1) Moreover, plaintiff fails to allege when these representations were made, scienter or how the representations proximately caused her losses. For all of these reasons, these allegations cannot support a fraud claim. *See Sun Micro Med. Techs. Corp. v. Passport Health Communications, Inc.*, 06 Civ. 2083 (RWS), 2006 U.S. Dist. LEXIS 87772, *32 (S.D.N.Y. Dec. 4, 2006) (dismissing fraud claim where plaintiff "failed to plead where and when the alleged statements of the Individual Defendants were made, why the alleged statements were fraudulent, or any facts to support any inference of fraudulent intent.").

**B.    Plaintiff Fails To State A Claim For Breach Of Contract**

To plead a claim for breach of contract under New York law, a plaintiff must allege "(1) the existence of an agreement; (2) the performance of the contract by plaintiff; (3) breach of the agreement by defendant; and (4) damages." *Advanced Mktg. Group, Inc. v. Bus. Payment Sys., LLC*, 481 F. Supp. 2d 319, 323 (S.D.N.Y. 2007) (citing *Harsco Corp. v. Segui*, 91

21

KL3 2648914.9

F.3d 337, 348 (2d Cir. 1996)). "In addition, the breach of contract allegations in the complaint

must include 'the provisions of the contract upon which the claim is based.'" *Leepson, PC v.*

*Allan Riley Co.*, 04 Civ. 3720 (LTS), 2006 U.S. Dist. LEXIS 52875, *8 (S.D.N.Y. July 31,

2006); *Atkinson v. Mobil Oil Corp.*, 205 A.D.2d. 719, 720, 614 N.Y.S.2d 36, 37 (2d Dep't 1994)

(affirming dismissal of complaint that did not put defendant on notice as to which contractual

provision was breached). Plaintiff has not met these requirements, for several reasons.

   *First,* plaintiff does not allege how defendants breached any contract they had

with her. She mentions two documents, which she does not attach to her Complaint: the Trust,

Estate and Guardian Account Agreement (the "Account Agreement"), which is the account

agreement between herself and Goldman, and the Discretionary Trading Authorization (the

"Trading Authorization"). (Ex. A ¶¶ 39, 40) She alleges that Goldman breached the provision in

the Account Agreement that:

> All transactions under this agreement shall be in accordance with
> the rules and customs of the exchange or market and its clearing
> house, if any, where the transactions are executed and in
> conformity with applicable law and regulation of governmental
> authorities and future amendments or supplements thereto.

(Ex. A ¶ 40; *see* Ex. I ¶ 1) But plaintiff does not point to a single rule, custom, law or regulation

that the transactions in her account violated. (*See* Ex. A ¶ 40)

   Plaintiff also says she represented in the Trading Authorization that she

"understand[s]" that certain transaction "will not be executed by you on a discretionary basis,"

including "the purchase of securities where Goldman Sachs is a participant in a registered public

offering," and that the Authorization bars transactions prohibited by Goldman's "other policies

and procedures. (Ex. A ¶ 41; *see* Ex. J at 1 ¶ (i)) But the authorization also states "I further

understand that you may modify the foregoing discretionary trading policies, without my

consent, or notice to me." (Ex. J at 2)

22

*Second,* even if either of these allegations pled a breach (which they do not)

plaintiff nowhere alleges the essential element of damages.

*Third,* because plaintiff does not allege any damages, she certainly does not allege

that any of defendants' supposed breaches proximately caused her any damages. The mere fact

that a defendant breached a contract is insufficient to sustain a complaint. Plaintiff must also

establish a causal relationship between the breach of contract and the damages claimed. *See*

*Jorgensen v. Century 21 Real Estate Corp.,* 217 A.D.2d 533, 534, 629 N.Y.S.2d 268, 270 (2d

Dep't 1995). *Lexington 360 Associates v. First Union Nat'l Bank of North Carolina,* 234 A.D.2d

187, 189-90, 651 N.Y.S.2d 490, 492-94 (1st Dep't 1996); (reversing denial of summary

judgment dismissing contract claim where plaintiff did not show damages resulting from alleged

breach); *Gordon v. Dino De Laurentiis Corp.,* 141 A.D.2d 435, 529 N.Y.S.2d 777, 779 (1st

Dep't 1988) (reversing denial of motion to dismiss contract claim where complaint does not

show how alleged breach injured plaintiff). Plaintiff does not even allege that any breach

proximately caused her any damages, much less facts showing that it did so.

The contract claim *against Ms. Frankel* must also be dismissed, for the

fundamental reason that plaintiff does not (and cannot) allege she ever entered into any contract

with Ms. Frankel.

### C.    Plaintiff Fails To State A Claim For Breach Of Fiduciary Duty

Plaintiff's claim for breach of fiduciary duty also fails to state a claim. *First,* New

York courts have long recognized that such claims are preempted by the Martin Act, N.Y. Gen.

Bus. Law 352 et seq., which grants the Attorney General exclusive enforcement powers over

fraudulent and deceitful practices in connection with the sale and purchase of securities. *See*

*Castellano v. Young & Rubicam, Inc.,* 257 F.3d 171, 190 (2d Cir. 2001) (citing cases addressing

preemption of breach of fiduciary duty claims); *Greene v. Hanover Direct, Inc.,* 06 Civ. 13308

23

(NRB), 2007 U.S. Dist. LEXIS 87327, *15 (S.D.N.Y. Nov. 21, 2007) (granting motion to

dismiss breach of fiduciary duty claims as preempted by the Martin Act); *South Cherry St. LLC*

*v. Hennessee Group LLC*, 534 F. Supp. 2d 405, 422 (S.D.N.Y. 2007) (same).

Second, to plead a claim for breach of fiduciary duty, a plaintiff must allege: (1) a

fiduciary duty between the parties; (2) defendant's breach of that duty; and (3) damages suffered

by the plaintiff which were proximately caused by the breach. *Craig v. Bank of New York*, 169

F. Supp. 2d 202, 210 (S.D.N.Y. 2001), *aff'd*, 59 Fed. Appx. 388 (2d Cir. Mar. 6, 2003). As

defendants have shown in Point III, A.1, plaintiff does not allege any facts that show her losses

were caused by defendants' conduct rather than by the decline in the stock market in 2000. *See*

*Laub v. Faessel*, 297 A.D.2d 28, 30, 745 N.Y.S.2d 534, 536 (1st Dep't 2002) (to establish a

breach of fiduciary duty, "plaintiff must establish that the alleged misrepresentations or other

misconduct were the direct and proximate cause of the losses claimed"; affirming summary

judgment dismissing investor's fiduciary duty claim).[6]

## IV.   IF THE COURT DOES NOT DISMISS PLAINTIFF'S CLAIMS, IT SHOULD DIRECT THE PARTIES TO ARBITRATION

If this Court does not dismiss plaintiff's claims, it should direct the parties to

arbitration for a ruling on the merits. It is undisputed that the parties agreed that "any

controversy" arising out of or relating to plaintiff's account "shall be settled by arbitration." (Ex.

I ¶ 12)[7] Indeed, plaintiff previously argued to this Court that "there is no dispute about whether

---

[6] In addition, plaintiff's allegations about Ms. Frankel's conduct before plaintiff opened her account cannot support a breach of fiduciary duty claim because Ms. Frankel did not owe her a fiduciary duty at that time.

[7] The full language of the provision is as follows:

12) Arbitration.
(a) Arbitration is final and binding on the parties.
(b) The parties are waiving their right to seek remedies in court, including the right to a jury trial.
(c) Pre-arbitration discovery is generally more limited than and different from court proceedings.
(d) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

there is a binding contract, or whether that contract to arbitrate applies to the controversy" and

that " the parties waived their rights to seek remedies in court and agreed that *any* controversies

would be submitted to arbitration . . . ." (Ex. C at 9, 11, emphasis in original)  Accordingly, if

this Court finds that plaintiff's claims are not in fact time-barred and do state a claim, it should

direct the parties to arbitration for a ruling on the merits.

## CONCLUSION

For all of these reasons, defendants respectfully request the Court to dismiss the

Complaint with prejudice.  In the alternative, this Court should direct the parties to arbitration.

Dated: New York, New York
       June 3, 2008

                            KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                    /s/ Michael J. Dell
                            _____
                            Michael J. Dell (MD-7714)
                            Karen Steinberg Kennedy (KSK-0357)
                            1177 Avenue of the Americas
                            New York, NY 10036
                            (212) 715-9100
                            Attorneys for Defendants

---

(e)  The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the
securities industry.
Any controversy between you (together with any of your affiliates also involved in such controversy) or any of your
or their Managing Directors, officer, directors or employees on the one hand, and Client or Client's agents on the
other hand, arising out of or relating to this agreement, the transactions contemplated hereby, or the accounts
established hereunder, shall be settled by arbitration, in accordance with the rules then obtaining of any one of the
American Arbitration Association or The New York Stock Exchange, Inc., or any other exchange of which you are a
member, or the National Association of Securities Dealers, Inc., or The Municipal Securities Rulemaking Board, as
Client may elect.  If Client does not make such election by registered mail addressed to you at your main office
within ten (10) days after receipt of notification from you requesting such election, then Client authorizes you to
make such election on behalf of Client.  The award of the arbitrator shall be final, and judgment upon the award
rendered may be entered in any court, state or federal, having jurisdiction.
No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration
agreement against any person who has initiated in court a putative class action or who is a member of a putative
class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i)
the class certification is denied; (ii) the class is decertified; or (iii) the Client is excluded from the class by the Court.
Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this
agreement except to the extent stated herein.

(Ex. I ¶ 12)

KL3 2648914.9