UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHERINE GRIFFIN, individually and as trustee of the
Katherine Griffin Living Trust,

08 Civ. 2992 (LMM)

                                    Plaintiff,

ECF Case

                    - against -

GOLDMAN, SACHS & CO. and SOFIA FRANKEL,

                                    Defendants.

**PLAINTIFF KATHERINE GRIFFIN'S
MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………...ii

PRELIMINARY STATEMENT………………………………………………………….1

STANDARD ON A MOTION TO DISMISS……………………………………………2

ARGUMENT…………………………………………………………………………...3

I.    PLAINTIFF'S CLAIMS ARE NOT BARRED
      BY COLLATERAL ESTOPPEL…………………………………………………3

II.   PLAINTIFF'S CLAIMS ARE NOT TIME-BARRED……………………………..9

      A.    All of Plaintiff's Claims are Brought Within
            Their Applicable Limitations Periods………………………………………..9

      B.    The Doctrine of Continuous Representation
            Applies to the Defendants…………………………………………………..12

      C.    The Doctrine of Fraudulent Concealment
            Is Applicable Here…………………………………………………………16

III.  PLAINTIFF'S COMPLAINT ADEQUATELY
      STATES PLAINTIFF'S CLAIMS…………………………………………………19

      A.    Plaintiff Adequately States a Claim for Fraud…………………………...19

      B.    Plaintiff Adequately States a Claim for Breach of Contract……………………..29

      C.    Plaintiff Adequately Pleaded her Breach of Fiduciary Duties Claim……………31

IV.   IF THE COURT DOES NOT DISMISS PLAINTIFF'S
      CLAIMS, IT SHOULD ALLOW THIS MATTER TO
      PROCEED BEFORE THE COURT AND SHOULD NOT
      DIRECT THE PARTIES TO ARBITRATION………………………………………34

V.    CONCLUSION…………………………………………………………………..35

## **TABLE OF AUTHORITIES**

### **CASES**

*Abdul-Alim Amin v. Universal Life Ins. Co.*,
    706 F.2d 638 (5th Cir.) 1983……………………………………………………...3

*Alevizopoulos and Assocs., v. Comcast Int'l Holdings, Inc.*,
    100 F.Supp.2d 178 (S.D.N.Y. 2000)………………………………………...17, 18

*In re Acquino's Will*,
    186 Misc. 7, 58 N.Y.S.2d 63 (N.Y. Surr. Ct. 1945)……………………………..17

*Banco de Desarrollo Agropecuario, S.A. v. Gibbs*,
    709 F. Supp. 1302 (S.D.N.Y. 1989)……………………………………………...3

*Basic Inc. v. Levinson*,
    485 U.S. 224, 108 S. Ct. 978 (1988)……………………………………………..28

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*,
    98 F.3d 13 (2d Cir. 1996)………………………………………………………..26

*Butler v. Gibbons*,
    173 A.D.2d 352, 569 N.Y.S.2d 722 (1st Dep't 1991)…………………………...10

*Caniglia v Chicago Tribune-New York News Syndicate*,
    204 A.D.2d 233, 612 N.Y.S.2d 146 (1st Dep't 1994)…………………………...25

*Cayuga Partners, LLC v 150 Grand, LLC*,
    305 A.D.2d 527, 759 N.Y.S.2d 347 (2d Dep't 2003)…………………………...25

*Cohen v. Goodfriend*,
    642 F. Supp. 95 (E.D.N.Y. 1986)………………………………………………..15

*Coleman & Co. Sec., Inc. v. Giaquinto Family Trust*,
    236 F. Supp.2d 288 (S.D.N.Y. 2002)…………………………………………...17

*Cortec Industries, Inc. v. Sum Holding, L.P.*,
    949 F.2d 42 (2d Cir. 1991)………………………………………………………27

*CPC Int'l Inc. v. McKesson Corp.*,
    70 N.Y.2d 268, 514 N.E.2d 116 (1987)…………………………………………32

*Cromer Fin. Ltd. v. Berger*,
    2001 U.S. Dist. LEXIS 14744 (S.D.N.Y. Sept. 19, 2001)……………………........33

*Duker v. Duker*,
  6 S.E.C. 386 (1939)……………………………………………………………………14

*Dymm v. Cahill*,
  730 F. Supp. 1245 (S.D.N.Y. 1990)……………………………………………15, 17, 18

*EBC I, Inc. v. Goldman, Sachs & Co.*,
  5 N.Y.3d 11, 799 N.Y.S.2d 170 (2005)…………………………………………………28

*Egelston v. State University College*,
  535 F.2d 752, 754 (2d Cir. 1976)…………………………………………………………3

*Frank Management, Inc. v. Weber*,
  145 Misc.2d 995, 549 N.Y.S.2d 317 (N.Y. Sup.Ct. 1989)………………………………10

*Friedman v. Wheat First Sec., Inc.*
  64 F.Supp.2d 338, 1999 U.S. Dist. LEXIS 13981 (S.D.N.Y. 1999)……………………...7

*Gaines v. City of New York*,
  215 N.Y. 533, 215 N.Y. (N.Y.S.) 533 (1915)…………………………………………..7

*Goldberg v. Schuman*,
  289 A.D.2d 8, 733 N.Y.S.2d 356 (1st Dep't 2001)……………………………………11

*Grumman Allied Ind., Inc. v. Rohr Ind., Inc.*,
  748 F.2d 729 (2d Cir 1984)………………………………………………………………18

*Hirsch v. Arthur Anderson & Co.*,
  72 F.3d 1085 (2d Cir. 1995)………………………………………………………………2

*Hughes v. JP Morgan Chase Co.*,
  2004 U.S. Dist. Lexis 11497 (S.D.N.Y. 2004)…………………………………15, 16

*Individual Sec. v. Ross*,
  152 F.3d 918, 1998 WL 385835, at 2 (2d Cir. 1998)…………………………………..7

*Joseph Francese, Inc. v. Enlarged City Sch. Dist. of Troy*,
  95 N.Y.2d 59, 731 N.E.2d 1123 (2000)…………………………………………………...8

*Katara v. D.E. Jones Commodities*,
  835 F.2d 966 (2d Cir. 1987)……………………………………………………………...24

*Kaufman v. Cohen*,
  307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003)…………………………………5

*Klein v. Spear, Leeds & Kellogg,*
      306 F. Supp. 743 (S.D.N.Y. 1969)……………………………………………………18

*Lentell v. Merrill Lynch & Co.,*
      396 F.3d 161 (2d Cir.), *cert. denied*, 545 U.S. 935 (2005)………………………………28

*Loengard v. Santa Fe Industries, Inc.,*
      70 N.Y.2d 262, 519 N.Y.S.2d 801, 514 N.E.2d 113 (1987)………………………………10

*In re Mac Robbins Co.,*
      1962 SEC 555 (1962)……………………………………………………………...13, 14

*McClure v. Intrust Brokerage Inc.,*
      Case No. 06-04647, 2007 NASD Arb. LEXIS 366 (April 4, 2007)………………………4

*McDaniel v. Bear Stearns & Co.,*
      196 F. Supp. 2d 343 (S.D.N.Y. 2002)……………………………………………13, 14

*Miller v. Polow,*
      14 A.D.3d 368, 787 N.Y.S.2d 319 (2005)……………………………………………...5, 9

*Nat'l Commer. Bank v. Morgan Stanley Asset Mgmt.,*
      1997 U.S. Dist. LEXIS 15921 (S.D.N.Y. Oct. 15, 1997)…………………………………24

*Ortiz v. Cornetta,*
      867 F.2d 146 (2d Cir. 1989)……………………………………………………………3

*Ozelkan v. Tyree Bros. Envtl. Servs., Inc.,*
      815 N.Y.S.2d 265, 29 A.D.3d 877 (2d Dep't 2006)……………………………………5

*Saphir Intl., SA v UBS PaineWebber Inc.,*
      25 A.D.3d 315, 807 N.Y.S.2d 58 (1st Dep't 2006)……………………………………5, 9

*Scalp & Blade, Inc. v. Advest, Inc.,*
      281 A.D.2d 882, 722 N.Y.S.2d 639 (4th Dep't 2001)…………………………………...33

*SEC v. Jones,*
      2006 U.S. Dist. LEXIS 22800 (S.D.N.Y. Apr. 25, 2006)…………………………………18

*Spallholz v. Sheldon,*
      216 N.Y. 205, 216 N.Y. (N.Y.S.) 205, 110 N.E. 431 (1915)……………………………17

*S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.,*
      84 F.3d 629 (2d Cir. 1996)……………………………………………………………24

*Standish-Parkin v. Lorillard Tobacco Co.*,
  12 A.D. 3d 301, 786 N.Y.S.2d 13 (1st Dep't 2004)…………………………………..18

*In re Sumitomo Copper Litig.*,
  120 F.Supp.2d 328 (S.D.N.Y. 2000)……………………………………………………18

*TSC Indus. v. Northway, Inc.*,
  426 U.S. 438 (1976)……………………………………………………………………...22

*Unibell Anesthesia, P.C. v. Guardian Life Ins. Co. of Am.*,
  239 A.D.2d 248, 658 N.Y.S.2d 14 (1st Dep't 1997)…………………………………11

*Varnberg v. Minnick*,
  760 F. Supp. 315 (S.D.N.Y. 1991)…………………………………………………..10, 11

*Whitney Holdings v. Givotovsky*,
  988 F.Supp. 732 (S.D.N.Y. 1997)…………………………………………………...5, 10,
                                                                                      11

*Yatter v. William Morris Agency, Inc.*,
  256 A.D.2d 260, 682 N.Y.S.2d 198 (1st Dep't 1998)………………………….........10, 11

*Yatter v. William Morris Agency, Inc.*,
  268 A.D.2d 335, 702 N.Y.S.2d 243 (1st Dep't 2000)………………………………….5, 9

*Zola v. Gordon*,
  685 F.Supp. 354 (S.D.N.Y. 1988)………………………………………………………10

## STATUTES

Federal Rule of Civil Procedure 12(b)(6)…………………………………………………2

New York CPLR § 203(g)…………………………………………..………….......4, 5, 9

New York CPLR § 204(b)………………………………………………….3, 4, 6, 7, 8, 9

New York CPLR § 205………………………………………….…………………………..7

New York CPLR § 213……………………………………………………....4, 5, 9, 10, 11

New York CPLR § 214(4)………………………………………………………………11

New York CPLR § 3014……………………………………………………………………26

N.Y. Gen. Bus. Law § 352, et seq……………………………………………….......32

**RULES**

Financial Industry Regulatory Authority ("FINRA") Rule 10304…………………………3, 4, 6, 35

FINRA Rule 10307(a)…………………………………………………………………………..7, 9

FINRA Rule 12206(b)……………………………………………………………………………6, 7

National Association of Securities Dealers Rule 2310-2……………………………...……13, 14, 15

New York Stock Exchange Rule 405…………………………………………………………………13

**MISCELLANEOUS**

Black's Law Dictionary (8th ed. 2004)……………………………………………………………...14

McKinney's
      Consolidated Laws of New York Annotated, Book 19, 1996…………………………...34

Norman S. Poser,
       Broker-Dealer Law and Regulation – Private Rights of Action, 185-191, 1995………34

Weinstein-Korn-Miller,
      NY Civ Prac P 204.06…………………………………………………………………..7

Plaintiff, Katherine Griffin, respectfully submits this memorandum in opposition to the motion of defendants, Goldman, Sachs & Co. ("Goldman, Sachs") and Sofia Frankel ("Frankel") (collectively, "Defendants") to dismiss the Complaint.

## PRELIMINARY STATEMENT

Defendants move to dismiss Plaintiff's causes of action on a variety of alternative grounds, each of which fails for the reasons set forth herein. In making their motion to dismiss, Defendants fail to acknowledge applicable law and facts and repeatedly ascribe to Plaintiff pleading requirements that Plaintiff, as a customer of Defendants who had given Defendant Frankel written discretionary control over her account (the "Account") with Defendant Goldman, Sachs, is not required to fulfill. In many instances, Defendants make irrational arguments, seemingly to expend this Court's twenty-five page limit on motion papers. As will be pointed out, the very language set forth in the Complaint evidences the specious nature of certain of Defendants' arguments.

In the Complaint, a copy of which is attached as Exhibit A to the Declaration of Michael J. Dell in Support of Defendants' Motion to Dismiss the Complaint (the "Dell Declaration"), Plaintiff has asserted specific allegations of fraud against Defendants, including, without limitation, Frankel's false representation that she had a Ph.D. and the Defendants' falsified charts, as well as allegations of breach of contract, failure to know the customer, gross overcharges and the omissions and other failures of Goldman, Sachs and Frankel, the specifics of all of which, on this motion, must be viewed as true, and in the light most favorable to Plaintiff. In moving to dismiss Plaintiff's fraud claim, Defendants attempt to deconstruct the Complaint by seeking to have this Court view as discrete and severable each misrepresentation and fraudulent act alleged in the Complaint. The Court should reject Defendants' effort to disassemble

Plaintiff's fraud claim.  In the Complaint, it is alleged that Frankel lied to Plaintiff in order to obtain discretionary control over more than two million dollars of Plaintiff's money and that Defendants continued to make material misrepresentations and omissions throughout the course of the relationship the Defendants had with Plaintiff.  The relationship between Plaintiff and Defendants, therefore, was premised upon and remained blanketed in fraud, and the misrepresentations and omissions made by Defendants to Plaintiff, and upon which Plaintiff relied, allowed Defendants to retain discretionary control over the Account and to effect improper and fraudulent acts in their control of the Account during 1999, 2000 and 2001, as alleged in the Complaint.  The fraud claim does not consist of isolated acts related to isolated transactions.

In deciding this motion, the Court would have to decide issues related to when Plaintiff's claims accrued.  Plaintiff has asserted fraudulent concealment and continuing representation, as discussed below, as well as other issues that require the Court to review and determine disputed material facts.  It is respectfully submitted that there are material issues which cannot be decided at this stage of the proceedings.  Accordingly, Defendants' motion to dismiss should be denied.

## STANDARD ON A MOTION TO DISMISS

Defendants' motion to dismiss the Complaint was brought pursuant to Federal Rule of Civil Procedure 12(b)(6).  In deciding such a motion, the Court must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the nonmoving party.  *See Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995).  Defendant's motion to dismiss is based, in part, on statute of limitations defenses to the Complaint.  "While a statute of limitations defense may be raised in a motion to dismiss . . . such a motion should not be granted unless it appears beyond a doubt that the plaintiff[s] can prove no set of facts in support of [their]

claim which would entitle [them] to relief." *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) (quoting *Abdul-Alim Amin v. Universal Life Ins. Co.*, 706 F.2d 638, 640 (5th Cir.) 1983) (internal quotations omitted)); *see also Egelston v. State University College*, 535 F.2d 752, 754 (2d Cir. 1976); *Banco de Desarrollo Agropecuario, S.A. v. Gibbs*, 709 F. Supp. 1302, 1309-10 (S.D.N.Y. 1989).

As will be discussed below, in moving to dismiss Plaintiff's causes of action, Defendants fail to satisfy the requirements set forth above. For this reason, Defendants' motion to dismiss should be denied

## ARGUMENT

## I.    PLAINTIFF'S CLAIMS ARE NOT BARRED BY COLLATERAL ESTOPPEL

Plaintiff's three causes of action are all timely claims which are not barred by the doctrine of collateral estoppel. Defendants' argument that Plaintiff is collaterally estopped from litigating her claims is incorrect and misleading because it fails to acknowledge that the standards for determining that a claim is not eligible for arbitration under the Financial Industry Regulatory Authority ("FINRA") Rule 10304 (the "Six Year Rule") are not the same as those for determining limitations issues pursuant to New York statutory and case law. Defendants' argument also fails to recognize the language set forth in FINRA's own Rule 10304(b), which states that dismissal of a claim under the Six Year Rule does not prohibit a party from subsequently pursuing that claim in court. Lastly, Defendants misrepresent the language and meaning of New York CPLR § 204(b) in arguing that Plaintiff is precluded by the language of this statutory provision from tolling the applicable statutes of limitation for that period of time her claims were pending before the National Association of Securities Dealers ("NASD"). Plaintiff is allowed to toll the relevant statutes of limitations for the period of time her claims

were before the NASD precisely in reliance on New York CPLR § 204(b).  For the reasons discussed below, Plaintiff's three causes of action are timely and should be allowed to proceed.

Defendants argue that, because the arbitration panel (the "Panel") in the arbitration before FINRA (the "Arbitration") determined that Plaintiff's claims were not eligible for arbitration under FINRA Rule 10304, Plaintiff is now collaterally estopped from litigating the very different issue of whether the very different provisions of the New York CPLR § 213 and the § 203(g) discovery provision allow that the fraud causes of action are timely.  (Defendants' Memo at pages 4-5).  Defendants' argument is, on its face, incorrect because, among other reasons, the standards for determining whether a claim is eligible for arbitration under FINRA Rule 10304 are materially different from determining limitations periods pursuant to New York statutory law.  The FINRA Rule acts as a substantive eligibility requirement; the New York statutes of limitation function as procedural requirements.  Defendants themselves have previously acknowledged this difference, at pages 7 through 8 of the Reply Memorandum in Further Support of Respondents Goldman, Sachs & Co. and Sofia Frankel's Motion to Dismiss, which they submitted in the Arbitration, citing to *McClure v. Intrust Brokerage Inc.*, Case No. 06-04647, 2007 NASD Arb. LEXIS 366, *3-4 (April 4, 2007) in support of their argument to the Panel that NASD Rule 10304 does not allow for tolling:

> Courts have uniformly held that Section 10304 or its predecessor Code section unequivocally establishes a substantive limitation on the claims that may be submitted to arbitration; that this provision acts as a statute of repose, and absolutely bars arbitration of those claims that are not submitted to arbitrators within six years of the occurrence or event giving rise to the claim; and that this provision is a substantive eligibility (forum jurisdiction) requirement, and *not a procedural requirement subject to tolling until discovery of the basis of the claim* (e.g., substantial investment losses supporting an unsuitability allegation).

(emphasis added).  The Panel in the Arbitration apparently agreed with Defendants' argument in holding that Plaintiff's claims were not eligible for arbitration under the Six Year Rule and in dismissing her claims, <u>without</u> <u>prejudice</u>.

As will be discussed in detail below, Defendants are wrong when they assert that "[a]ll three of plaintiff's state law causes of action are therefore time-barred, because their statutes of limitations are all six years or less."  (Defendant's Memo at 5).  Under New York law, the limitations period for fraud is <u>either</u> six years from the date of wrongdoing, pursuant to New York CPLR § 213, <u>or</u> two years from the date of discovery of the fraud, pursuant to New York CPLR § 203(g), <u>whichever is longer</u>.  *Saphir Intl., SA v UBS PaineWebber Inc.*, 25 A.D.3d 315, 807 N.Y.S.2d 58 (1st Dep't 2006); *Miller v. Polow*, 14 A.D.3d 368, 787 N.Y.S.2d 319 (2005); *Yatter v. William Morris Agency, Inc.* 268 A.D.2d 335, 336, 702 N.Y.S.2d 243 (1st Dep't 2000). New York courts have held that discovery accrual also applies to claims for breach of fiduciary duties based on allegations of actual fraud.  *See Ozelkan v. Tyree Bros. Envtl. Servs., Inc.*, 815 N.Y.S.2d 265, 29 A.D.3d 877 (2d Dep't 2006); *Kaufman v. Cohen*, 307 A.D.2d 113, 122, 760 N.Y.S.2d 157, 167 (1st Dep't 2003) (citing *Yatter,* 268 A.D.2d at 336; *Whitney Holdings v. Givitovsky*, 988 F. Supp. 732, 744 (S.D.N.Y. 1997).  Therefore, pursuant to New York's discovery accrual rule, a cause of action which is not eligible for arbitration under FINRA'S Six Year Rule may be viable before the New York courts.

New York law offers additional extensions and tolls which are not afforded to a FINRA claimant and which effectively enlarge the period within which a plaintiff may bring a cause of action.  As discussed in Section II (B) below, under the continuous representation doctrine, the statute of limitations applicable to these claims against Goldman, Sachs did not begin to run until the discretionary control Goldman, Sachs had over the Account ended, on January 18, 2001.

Similarly, the statute did not begin to run on these claims against Frankel until the discretionary account relationship between Plaintiff and Frankel ended in January 2004. Additionally, as discussed in Section II (C) below, all of Plaintiff's claims against Defendants are subject to equitable tolling based on the Defendants' fraudulent concealment. Lastly, New York CPLR § 204(b) tolls limitations periods during the pendency of an arbitration that results in a determination that there was not the obligation to arbitrate.

The language set forth in FINRA Rule 10304(b) acknowledges that a claimant whose claims are dismissed pursuant to the Six Year Rule may bring an action in court:

> Dismissal of a claim under this Rule does not prohibit a party from pursuing the claim in court. By requesting dismissal of a claim under this Rule, the requesting party agrees that if the panel dismisses a claim under the Rule, the party that filed the dismissed claim may withdraw any remaining related claims without prejudice and may pursue all of the claims in court.

FINRA Rule 12206(b), which supersedes FINRA Rule 10304(b), contains essentially the same language. The Panel did not consider testimony or evidence introduced in an evidentiary hearing in rendering its March 3, 2008 award (the "Award"), a copy of which is attached to the Dell Declaration as Exhibit E, but, rather, granted Defendants' Motion to Dismiss on the basis that Plaintiff's claims were time-barred under FINRA Rule 10304. In apparent acknowledgement of Rule 10304(b), the Panel dismissed Plaintiff's claims *without prejudice*. When the Panel announced its holding at the arbitration hearings on January 30, 2008, the Chair specifically stated, on the record, that Plaintiff could seek further relief in court. In effect, Plaintiff was no longer *obligated* to arbitrate her claims before the NASD forum because it had been determined that the six-year substantive eligibility requirement precluded Plaintiff from doing so.

6

Contrary to what is asserted by Defendants, Plaintiff's claims against Defendants were tolled during the pendency of the Arbitration pursuant to FINRA Rule 10307(a)[1] and New York CPLR § 204(b).  FINRA Rule 10307(a) states that

> [w]here permitted by applicable law, the time limitations which would otherwise run or accrue for the institution of legal proceedings shall be tolled where a duly executed Submission Agreement is filed by the Claimant(s). The tolling shall continue for such period as the Association shall retain jurisdiction upon the matter submitted.

Courts have held that the phrase "where permitted by applicable law" in Rule 10307(a) requires that the limitations period may only be tolled where it is specifically permitted by applicable law. Under New York law, such permission is granted pursuant to CPLR § 204(b).  *See, e.g.* *Friedman v. Wheat First Sec., Inc.*, 64 F.Supp.2d 338, 1999 U.S. Dist. LEXIS 13981 (S.D.N.Y. 1999); *Individual Sec. v. Ross*, 152 F.3d 918, 1998 WL 385835, at 2 (2d Cir. 1998).

New York CPLR § 204(b) states:

> Where it shall have been determined that a party is not obligated to submit a claim to arbitration, the time which elapsed between the demand for arbitration and the final determination that there is no obligation to arbitrate is not part of the time within which an action upon such claim must be commenced.  The time within which the action must be commenced shall not be extended by this provision beyond one year after such final determination.

"The function of CPLR 204(b) is similar to that of CPLR 205, which extends the time for commencing *a second action* after *a timely action* has been terminated in a manner other than by voluntary discontinuance, a dismissal for neglect to prosecute, or a final judgment on the merits." *Id.* (citing *Gaines v. City of New York,* 215 N.Y. 533, 215 N.Y. (N.Y.S.) 533 (1915); 1 Weinstein-Korn-Miller, *NY Civ Prac P* 204.06, at 2-191). NY CPLR § 204(b) tolls that

---

[1] As of April 16, 2007, FINRA Rule 10307(a) was superseded by FINRA Rule 12206(c), for claims filed on or after that date.  FINRA Rule 10307(a) remains in effect for cases filed before April 16, 2007.  Plaintiff's claims were filed with FINRA in December 2006.

7

applicable limitations period "between the time a demand for arbitration is made and a final determination that the dispute is not the proper subject of arbitration." *Joseph Francese, Inc. v. Enlarged City Sch. Dist. of Troy,* 95 N.Y.2d 59, 731 N.E.2d 1123 (2000).

In the Arbitration, the Panel held that Plaintiff was not obligated to submit her claims to arbitration because the Six Year Rule, a substantive eligibility requirement, precluded Plaintiff's claims from being determined in the arbitral forum.  As set forth above, FINRA's Rule 10304(b) provides that where a claimant's claims are dismissed pursuant to the Six Year Rule, the claimant may bring her claims in court where permitted by applicable law.  A dismissal of a claimant's claim pursuant to the Six Year Rule acknowledges that the claimant is no longer obligated to arbitrate her claims and can, applicable law permitting, bring her claims in court.  Contrary to what Defendants argue, there is nothing in the express language of New York CPLR §204(b), or in the New York case law, which prevents the tolling of Plaintiff's claims for the period of time the claims were pending in the arbitral forum.

Defendants' two-prong argument that Plaintiff cannot avail herself of CPLR § 204(b)'s tolling provision because she had expressly acknowledged to this Court that she *was* obligated to submit a claim to arbitration and that this Court upheld that argument is misleading as to the first prong and erroneous as to the second. (Defendants' Memo at 5-6).  The language selectively quoted by Defendants in support of Defendants' argument was taken from Plaintiff's opposition to Defendants' motion for a permanent stay of arbitration, a copy of which is attached to the Dell Declaration as Exhibit C, where she argued that timeliness issues pursuant to statutes of limitation or the six year rule were for the NASD arbitrators, and not the courts, to determine.  In arguing that the parties waived their rights to seek remedies in court and agreed that any controversies would be submitted to arbitration, Plaintiff acknowledged that submission to

arbitration would be governed by the applicable forum rules, which would include the FINRA

Six Year Rule: ". . . the parties waived their rights to seek remedies in court and agreed that <u>any</u>

controversies would be submitted to arbitration *in accordance with the rules of the applicable*

*exchange or self-regulatory organization elected by the client*." (Plaintiff's Opposition at 11)

(emphasis added).  Furthermore, this Court did not uphold any purported argument by Plaintiff

that she was *obligated* to submit her claims to arbitration.  Rather, in its May 16, 2007

Memorandum and Order, attached to the Dell Declaration as Exhibit D, this Court specifically

held that under the Federal Arbitration Act and the governing case law, the issue of whether

Plaintiff's claims were barred by any New York statute of limitation was for the arbitrator, and

not this Court, to determine.

　　　　The Panel never reached the New York statutes, dismissing solely on the FINRA Six

Year Rule.  Plaintiff's claims are not barred by the doctrine of collateral estoppel and are subject

to the tolling provisions of FINRA Rule 10307 and New York CPLR § 204(b).  For the

foregoing reasons, Defendants' motion to dismiss based on the doctrine of collateral estoppel

should be denied.

## II.　　PLAINTIFF'S CLAIMS ARE NOT TIME-BARRED

### A.　　<u>All of Plaintiff's Claims are Brought Within their Applicable Limitations Periods</u>

　　　　Contrary to what is asserted in the Motion to Dismiss, all of Plaintiff's claims against

Defendants are brought within their applicable limitations periods.  Plaintiff's breach of contract

claim is subject to a six-year limitations period.  *See* CPLR § 213.  The limitations period for

Plaintiff's fraud and breach of fiduciary duties claims is either six years from date of

wrongdoing, pursuant to New York CPLR § 213, or two years from the date of discovery of the

fraud or breach, pursuant to New York CPLR § 203(g), whichever is longer.  *Saphir Intl., SA,* 25

A.D.3d 315; *Miller v. Polow*, 14 A.D.3d at 368; *Yatter*, 268 A.D.2d at 335.  While Defendants

do not dispute that six-year limitation periods apply to Plaintiff's common law fraud and breach of contract claims, they incorrectly assert that Plaintiff's breach of fiduciary duties claim is subject to a three-year statute of limitations. Furthermore, Defendants assert incorrect accrual methods for Plaintiff's claims

Defendants fail to acknowledge that a six-year statute of limitations applies to a breach of fiduciary duties claim which is based in contract or fraud. *See*, *e.g.*, *Varnberg v. Minnick*, 760 F. Supp. 315, 332-33 (S.D.N.Y. 1991) (breach of fiduciary duties claim that is closer to a claim sounding in contract or fraud is governed by six-year limitation); *Frank Management, Inc. v. Weber,* 145 Misc.2d 995, 999, 549 N.Y.S.2d 317, 318-320 (N.Y. Sup.Ct. 1989) (six-year limitations period applicable to contract actions, rather than three-year period applicable to tort claims, governed claim for breach of fiduciary duty, which "had its genesis in a contractual relationship, express or implied, between the parties." citing *Zola v. Gordon*, 685 F.Supp. 354 (S.D.N.Y. 1988) (six-year limitation applied where damages sought for breach of fiduciary duty). *See also Butler v. Gibbons*, 173 A.D.2d 352, 569 N.Y.S.2d 722, 723 (1st Dep't 1991) (breach of fiduciary duties claim related to joint venture agreement subject to six-year limitations, citing N.Y. CPLR §213).

New York law provides for more than one limitations period for breach of fiduciary duty claims, and the period for this Plaintiff's claim is six years. *See Whitney Holdings,* 988 F.Supp. at 741. Generally, the applicable limitations period for a breach of fiduciary duty claim depends on the substantive remedy sought. *Loengard v. Santa Fe Industries, Inc.*, 70 N.Y.2d 262, 267, 519 N.Y.S.2d 801, 514 N.E.2d 113 (1987); *Yatter v. William Morris Agency*, 256 A.D.2d 260, 261, 682 N.Y.S.2d 198 (1998). Where the relief sought is equitable in nature, the six-year limitations period of CPLR § 213(1) applies. *See Loengard*, 70 N.Y.2d at 267; *Whitney*

10

*Holdings,* 988 F.Supp. at 741. Conversely, where the relief sought is only monetary and the breach of fiduciary duty claim is not based on allegations of actual fraud, courts have deemed such actions as alleging "injury to property," to which a three-year statute of limitations applies. *See* CPLR § 214(4*); Yatter v. William Morris Agency*, 256 A.D.2d at 261; *Whitney Holdings,* 988 F. Supp. at 741. While the nature of the relief sought is *generally* determinative of the applicable limitations period for claims for breach of fiduciary duty, the case law in New York holds that a cause of action for breach of fiduciary duty based on allegations of actual fraud is subject to a six-year limitations period. *See Goldberg v. Schuman*, 289 A.D.2d 8, 733 N.Y.S.2d 356 (1st Dep't 2001) (plaintiff's claim for fraud and breach of fiduciary duty governed by six-year limitations period in CPLR § 213); *Unibell Anesthesia, P.C. v. Guardian Life Ins. Co. of Am.*, 239 A.D.2d 248, 658 N.Y.S.2d 14 (1st Dep't 1997) (court correctly applied six-year limitations period, instead of three-year period, to breach of fiduciary duty claim where complaint also made out cause of action for fraud by insurer). Plaintiff's breach of fiduciary duties claim has as its basis the specifically alleged fraudulent acts of Defendants. Therefore, the six-year limitations period applies, and not the three-year period.

When determining whether a breach of fiduciary duties claim is closer to a fraud than to an injury to property, the gravamen of the complaint must be considered. *See Varnberg*, 760 F. Supp. at 332-33. The misconduct upon which the breach of fiduciary duties claim is founded is misconduct upon which the breach of contract claim is founded. Plaintiff's breach of fiduciary duties claim is grounded in the contractual relationship between the parties and Defendants' fraudulent acts, and, as such, it is entitled to a six-year statute of limitations.

In arguing to dismiss Plaintiff's causes of action on limitations grounds, Defendants assert that a breach of contract cause of action accrues under New York law at the time of

breach, but they ignore the continuous fiduciary relationship of Plaintiff with Defendants in making this assertion.  As discussed in greater detail below, the continuous representation doctrine provides that Plaintiff's breach of contract action did not accrue until Plaintiff's respective relationships with each of the Defendants ended.  Furthermore, in asserting that causes of action for breach of fiduciary duty and fraud accrue upon occurrence of the wrongful act, Defendants fail to acknowledge the two-year discovery accrual that applies to each of these causes of action.  Defendants' habit of providing incomplete and misleading statements of the facts in support of their arguments should be rejected by this Court and Defendants' motion to dismiss should be denied.

### B. The Doctrine of Continuous Representation Applies to the Defendants

Pursuant to the doctrine of continuous representation, Plaintiff's claims are not time-barred by New York's statutes of limitations.  Defendants ground their Motion to Dismiss in a fiction by seeking to cut off the pertinent time period as of December 19, 2000, the date they assert is when the last transaction took place in Plaintiff's Account.  Under applicable New York law, because Plaintiff maintained her Account with Goldman, Sachs until January 18, 2001, the applicable period as to Goldman, Sachs runs through January 18, 2001, the time when Plaintiff ended her relationship with Goldman, Sachs.  Pursuant to the discretionary authority granted to Goldman, Sachs, it retained complete discretionary control over Plaintiff's Account until January 18, 2001.  Accordingly, since Plaintiff filed her Statement of Claim in December 2006, her common law fraud, breach of contract and breach of fiduciary duties claims were asserted well within the applicable six-year period, which did not expire as to Goldman, Sachs until January 18, 2007, at the earliest.  Similarly, Frankel having maintained her discretionary control over Plaintiff's portfolio when it transferred intact from Goldman, Sachs to Lehman Brothers

12

(Complaint at Paragraph 3), the applicable six-year period as to all of Plaintiff's claims against Frankel did not begin to run until at least January 2004, making all of these claims timely as well.

Goldman, Sachs owed Plaintiff a duty of "fair dealing" from the moment Frankel solicited the Plaintiff's Account to the date that the Account transferred from Goldman, Sachs to Lehman Brothers. *See In re Mac Robbins Co.*, 1962 SEC 555 (1962); *McDaniel v. Bear Stearns & Co.*, 196 F. Supp. 2d 343 (S.D.N.Y. 2002) and NASD Rule 2310-2, all discussed below. This duty encompassed not only basic notions of fair dealing, but also compliance with industry rules and regulations, such as New York Stock Exchange ("NYSE") Rule 405 (know your customer and suitability). Goldman, Sachs also had a duty to supervise with respect to Plaintiff's Account, from the moment the Account entered the firm until the time it left. These duties owed by Goldman, Sachs did not end with Frankel's departure from Goldman, Sachs – they ran directly from Goldman, Sachs to Plaintiff. And, the fact that Goldman, Sachs retained discretionary control over Plaintiff's Account until January 18, 2001 heightens its fiduciary duties. Thus, while Goldman, Sachs tries to focus solely on "transactions," individual purchases and sales of securities which occurred in Plaintiff's Account, under New York law, Plaintiff's claims against Goldman, Sachs did not accrue until the end of the relationship on January 18, 2001, when the fiduciary duties Goldman, Sachs owed to Plaintiff ended. Because Plaintiff transferred her Account directly and intact to Frankel's control at Lehman Brothers upon being solicited by Frankel to do so when Frankel left Goldman, Sachs, and then the same relationship continued with Frankel, Plaintiff's claims as against Frankel, including those for the Goldman time period, did not accrue until Plaintiff ended her relationship with Frankel in January 2004.

It was early in the inception of the securities laws that the Securities and Exchange Commission ("SEC") mandated that a basic element of the relationship between a broker or dealer and the customer is the representation that the customer will be dealt with fairly and in accordance with the standards of the profession. *In re Mac Robbins Co*., 1962 SEC 555 at *6, citing *Duker v. Duker*, 6 S.E.C. 386 (1939). ***The failure of a broker or dealer to disclose that his or her conduct does not meet such standards operates as a fraud on customers***. Id.

Moreover, there is the duty imposed under the "shingle" theory. The shingle theory is:

> [t]he notion that a broker-dealer must be held to a high standard of conduct because by engaging in the securities business ('hanging out a shingle'), the broker-dealer implicitly represents to the world that the conduct of all its employees will be fair and meet professional norms.

Black's Law Dictionary 1410-11 (8th ed. 2004). These duties have been further set out by the NASD, and the NYSE. For example, NASD Rule 2310-2 requires all members to "adhere to the principles of good business practice in the conduct of [their] business affair[s], and imposes upon members a 'fundamental responsibility for fair dealing' with customers, requires members to 'deal fairly with the public,' and recognizes that brokers and dealers have an obligation of fair dealing in actions under the general anti-fraud provisions of the federal security laws." *See McDaniel*, 196 F. Supp.2d at 360.

Accordingly, courts routinely recognize the on-going nature of the duties owed by the broker to a client throughout the relationship. For example, suitability is an ongoing obligation of a broker/dealer, such that a broker/dealer has an obligation to review suitability continuously and in light of changing client and market circumstances. NASD Rule 2310-2(4)(B) states: ". . . fraudulent activities, such as . . . non-disclosure or misstatement of material facts, manipulations and various deceptions, have been found in violation of Association Rules." Therefore, the

existence of and the date of ending of the customer relationship is determinative of the timing of when the on-going duty to disclose fraudulent activity or to correct misstatements of material facts ends.

In New York, claims against portfolio managers and investment advisors are subject to the "continuous representation" doctrine. *See Hughes v. JP Morgan Chase Co.*, 2004 U.S. Dist. Lexis 11497 (S.D.N.Y. 2004). *See also Dymm v. Cahill*, 730 F. Supp. 1245, 1263-64 (S.D.N.Y. 1990) (applying the continuous relationship doctrine to negligence claims against accountant providing investment advice and acting as investment advisor); *Cohen v. Goodfriend*, 642 F. Supp. 95 (E.D.N.Y. 1986). Pursuant to that doctrine, when a course of conduct which includes the wrongful acts or omissions has run continuously and is related to the complaint, a claim accrues only at the end of the representation. *Hughes*, *supra*, at 10-11. The doctrine is premised on the trust relationship between the parties and the inequity of barring the client from suing based on the running of the statute of limitations during the life of the relationship. *Id*. at 11. The scope of the doctrine has been expanded on the theory that professionals, such as Goldman, Sachs and Frankel, who have an on-going relationship with their clients, are in the best position to correct their misconduct. *Id.* at 11-12. Accordingly, under the continuous representation doctrine, the claims against Goldman, Sachs did not begin to run until the relationship between it and Plaintiff ended on January 18, 2001. Similarly, the claims against Frankel did not accrue until the relationship between Plaintiff and Frankel ended in January 2004. This is consistent, too, with NASD Rule 2310-2(4)(B).

In support of its holding, the court in *Hughes* stated that it looked to the fact that the defendants "managed Plaintiff's Account continuously through the time period at issue and Plaintiff was entitled to rely on their professional expertise to correct any potential malpractice

they might have committed." 01 Civ. 6087 (BSJ), 2004 U.S. Dist. Lexis 11497 (S.D.N.Y. 2004).

Furthermore, the *Hughes* court stated it saw "no relevant distinction between portfolio managers

and investment advisors, to whom the courts have held this doctrine to apply." *Id.*, note 10.

Here, Ms. Frankel was not Plaintiff's broker effecting transactions directed by her customer, the

Plaintiff. Frankel was Plaintiff's trusted investment advisor with written discretionary control

over Plaintiff's Account. Each and every transaction in Plaintiff's Account throughout the

relationship was determined solely by Frankel and Goldman, Sachs (Complaint at Paragraphs 2,

3, 16, 17 and 19). Moreover, Ms. Frankel was not represented to Plaintiff to be a typical broker,

she was falsely represented by Defendants to be an unusually accomplished "star" with a Ph.D.

in mathematics who far out-performed others, as portrayed in the misleading performance charts

Defendants gave to Plaintiff to induce the opening of, and the maintaining of, the Plaintiff's

Account under Frankel's discretionary control. (Complaint at Paragraphs 1, 2, 3, 14, 15, 17, 18,

24, 25 and 32).

Defendants' duties to Plaintiff ran through their entire respective relationships with

Plaintiff. For limitations purposes, Plaintiff's claims against Goldman, Sachs did not begin to

run until at least January 18, 2001, making these claims filed in December 2006 timely filed

within the six-year limitations periods. Similarly, Plaintiff's claims against Frankel, including

those for the period Frankel was at Goldman, Sachs did not begin to run until at least January

2004, making all these claims timely as well.

## C.    <u>The Doctrine of Fraudulent Concealment is Applicable Here</u>

All of Plaintiff's claims against Defendants are subject to equitable tolling due to

Defendants' fraudulent concealment. Goldman, Sachs learned of Frankel's misconduct and lies

years before the Statement of Claim was filed in the Arbitration, and Defendants hid that

knowledge from Plaintiff, despite the fact that they continued to owe duties to disclose such material facts to Plaintiff as a customer of Goldman, Sachs.  (Complaint at ¶¶ 4, 25, 26, 28 and 46).  The fraudulent concealment tolled all of Plaintiff's claims.  Plaintiff alleges she was initially won over by Frankel after their first meeting, at which Frankel provided her with these customer performance charts prepared by Goldman, Sachs that purported to show that customers' accounts under Frankel's management and control had very substantially out-performed the market in the prior three years.  (Complaint at Paragraph 16).  The charts that were shown to Plaintiff at this meeting with Frankel, and given to her by Defendants, are attached to the Complaint.  These are the charts which Defendants have falsely represented in previous proceedings against them were merely drafts that were not given to customers, continuing Defendants' pattern of concealment of the fraud.

Fraudulent concealment tolls the statute of limitations.  *See, e.g.*, *In re Acquino's Will, 186 Misc. 7, 58 N.Y.S.2d 63 (N.Y. Surr. Ct. 1945)* ("It is unquestioned that fraud suspends the operation of the statute of limitations.") (citing *Spallholz v. Sheldon,* 216 N.Y. 205, 216 N.Y. (N.Y.S.) 205, 110 N.E. 431 (1915)).  New York courts apply equitable tolling where, *inter alia*, the defendant conceals from the plaintiff the fact that there is a cause of action.  *Coleman & Co. Sec., Inc. v. Giaquinto Family Trust,* 236 F. Supp.2d 288, 299 (S.D.N.Y. 2002); (*Alevizopoulos and Assocs., v. Comcast Int'l Holdings, Inc.*, 100 F.Supp.2d 178 (S.D.N.Y. 2000).  To invoke fraudulent concealment, a plaintiff must show wrongful concealment by defendant of its actions, failure by plaintiff to discover the operative facts during the limitations period, and plaintiff's due diligence in trying to discover the facts (unless the fraud is self-concealing in nature, as discussed below).  *See Dymm*, 730 F. Supp. at  1255-56.  Where a plaintiff has shown the defendant that a fiduciary duty, or other duty to disclose material information to the plaintiff

17

(both of which exist here), the plaintiff need not show an affirmative misrepresentation or even active concealment by the defendant, and silence in the face of a duty to speak establishes fraudulent concealment. *Id*. at 1256. Where a defendant has a duty to disclose, the plaintiff only needs to "show that he remained in ignorance of the fraud of his fiduciaries without any fault or want of due diligence or care on his part." Id. (citation omitted). *See also Klein v. Spear, Leeds & Kellogg,* 306 F. Supp. 743, 749 (S.D.N.Y. 1969) (same). There also can be a duty to disclose even absent a fiduciary duty. "A duty to disclose arises either where the parties are in a fiduciary relationship or 'where one party possesses superior knowledge not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.'" *Dymm*, *supra*, 730 F. Supp. at 1253 n3, *quoting Grumman Allied Ind., Inc. v. Rohr Ind., Inc.*, 748 F.2d 729, 738-39 (2d Cir 1984). *See also Standish-Parkin v. Lorillard Tobacco Co*., 12 A.D. 3d 301, 303, 786 N.Y.S.2d 13 (1st Dep't 2004) (fraud may be predicated on acts of concealment when the defendant had a duty to disclose material information).

A plaintiff can establish fraudulent concealment to toll the statute of limitations by showing that the wrong itself was self-concealing. *SEC v. Jones*, 2006 U.S. Dist. LEXIS 22800, at *16-17 (S.D.N.Y. Apr. 25, 2006). ("When an alleged violation is inherently self-concealing, an assertion of such a scheme is sufficient and plaintiff need not plead any affirmative actions by a defendant.") (citation omitted); *Alevizopoulos*, 100 F.Supp.2d at 184 (limitations period tolled where the fraud which furnishes the basis of the action is self-concealing; defendants' failure to notify plaintiff of its actions is sufficient); *In re Sumitomo Copper Litig.*, 120 F.Supp.2d 328, 346 (S.D.N.Y. 2000) (limitations period tolled where the wrong, failing to disclose bid improprieties, was self-concealing in nature).

The Complaint alleges facts constituting a classic case of fraudulent concealment which allows for equitable tolling of statutes of limitation as to Plaintiff's claims against Defendants. In addition, Defendants' fraudulent conduct was inherently "self-concealing." No amount of due diligence by Plaintiff would have revealed this fraud when the relationships ended. The monthly statements and trade confirmations received by Defendants could have in no way informed Plaintiff of the false and misleading nature of the performance charts she was given, or that Frankel lied about her education, or her improper methods for creating gross overcharges by Frankel lying to her supervisors, among other false statements alleged in the Complaint. (Complaint at Paragraphs 1, 2, 3, 14, 15, 17, 18, 24, 25 and 32). The onus was on Defendants to be truthful with Plaintiff, not on Plaintiff to call Defendants and ask if she was being defrauded. Moreover, Goldman, Sachs continued to support the fraud by falsely representing, in previous proceedings, that the charts are "drafts" that were not given to customers.

## III.    PLAINTIFF'S COMPLAINT ADEQUATELY STATES PLAINTIFF'S CLAIMS

### A.    Plaintiff Adequately States a Claim for Fraud

Defendants argue that Plaintiff fails to state a claim for fraud based on (i) statements at the initial meeting between Plaintiff and Defendant Frankel; (ii) transactions in Plaintiff's Account; (iii) analyst reports as to WorldCom and Global Crossing and conflict of interest with respect to eToys; and (iv) Defendant Frankel's misrepresentations to Plaintiff about her trading methods which turned out to merely be a practice of selling the gains and holding the losses. Setting aside the fact that Defendants misstate and mischaracterize the bases for Plaintiff's fraud allegations for purposes of their argument, for the below discussed reasons, Plaintiff adequately states a claim for fraud based upon her allegations.

19

Furthermore, Defendants' attempts to reduce Plaintiff's fraud claim to separate and distinct misrepresentations, omissions and acts, each of which they ask this Court to examine in a vacuum, should be rejected by the Court. Frankel's fraud upon Plaintiff should be viewed in its entirety. When this four-and-a-half year pattern of fraud is viewed in this manner, one sees a broker, Frankel, who made material misrepresentations to the Plaintiff, a potential client, in order to induce Plaintiff to transfer over $2 million to Goldman, Sachs and to obtain discretionary control over Plaintiff's funds, followed by a series of misrepresentations and omissions by Frankel leading to Frankel being able to over-charge the Account, Frankel's fraudulent practices as to new issues, and her false representations as to her methodology for managing Plaintiff's Account, which turned out to be holding losses while taking short-term profits instead of an investment strategy for both rising and falling markets. Clearly, Plaintiff has alleged her justifiable reliance on Defendants' statements, and she has alleged substantial damages that this Plaintiff would not have suffered had she not transferred her money to Frankel and left it in Defendants' management and control until January 2001, as to Goldman, Sachs, and January 2004, as to Frankel.

Plaintiff adequately states a claim for fraud based on the false performance charts presented to her by Defendant Frankel and false statements made by Frankel to Plaintiff related to Frankel's Ph.D. and Frankel's investment strategy. Defendants mischaracterize these bases as "statements at the 'initial meeting.'" While Frankel did make these material misrepresentations to Plaintiff at their initial meeting on or about July 1999, Frankel's misrepresentations to Plaintiff were ongoing throughout the course of Plaintiff's relationship with Frankel.

Defendants mischaracterize the factual allegations of the Complaint when they argue that Plaintiff's "mere repetition of the allegation that Ms. Frankel's performance charts were "false"

or "fraudulent" is insufficient to allege a material misrepresentation." (Defendants' Memo at 12).

In the Complaint, Plaintiff alleges that the Charts are a "fiction" specifically because:  the

portfolio upon which the composite was purportedly drawn did not exist as set forth in the

composite; the Charts did not include what they claimed to include, namely, non-discretionary

accounts; and, certain figures set forth on the Charts were materially incorrect.  Plaintiff's

allegations as to the fraudulent nature of the Charts are adequately set forth, in great detail, in

Paragraphs 17, 18, and 32 of the Complaint.  Defendants' characterization of Plaintiff's

allegations as "conjecture" is absurd, and, at best, Defendants have merely shown that there are

material issues of fact as to the fraudulent Charts that can only be resolved at trial.  If Defendants

wish to show that Plaintiff's allegations as to the fraudulent nature of the Charts are "conjecture,"

Defendants should produce evidence, such as the documents upon which the information in the

Charts was purportedly derived, to disprove Plaintiff's very specific allegations as to why the

Charts are fraudulent.  At this early stage in the proceedings, case law holds that Plaintiff's

specific allegations should be accepted as true and be construed in the light most favorable to

Plaintiff.  "Conjecture," therefore, is an inappropriate characterization of Plaintiff's fraud

allegations for purposes of Defendants' Motion to Dismiss.

Defendants falsely assert that Plaintiff did not adequately allege that the misstatements in

the Charts were material.  (Defendants' Memo at 13).  The materiality standard turns on the

following:

> [Whether] there is a substantial likelihood that a reasonable
> shareholder would consider it important in deciding how to vote . .
> . . Put another way, there must be a substantial likelihood that the
> disclosure of the omitted fact would have been viewed by the
> reasonable investor as having significantly altered the "total mix"
> of information made available.

*TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).  In the Complaint, Plaintiff repeatedly alleges materiality with respect to the misrepresentations contained in the Charts:

> Plaintiff relied upon the name and reputation of Goldman Sachs, the misrepresentations as to Frankel's education and abilities, and the misrepresentations concerning the performance of accounts under her management, including those made in the fraudulent charts Defendants prepared and used, and, based upon this reliance, Plaintiff allowed Frankel to maintain discretionary control over her Goldman Sachs account until Frankel left Goldman Sachs and went to Lehman Brothers in December 2000. (¶3 of the Complaint).

> Although initially cautious about transferring funds from an existing account Katherine had maintained with a broker she "adored," David Parks, Katherine was won over by Frankel after their initial meeting where Frankel falsely represented her education and other credentials, and provided Katherine with customer performance charts prepared by Goldman Sachs that purported to show that customers' accounts under Frankel's management and control had very substantially out-performed the market in the prior three years.  (¶ 16 of the Complaint).

> But for the fraudulent acts of Defendants, Plaintiff would not have opened, and then maintained, her Account with Frankel at Goldman Sachs.  (¶ 29 of the Complaint).

Defendants further argue that Plaintiff does not allege why the misrepresentations contained in the Charts would affect her decision to open her Account.  (Defendants' Memo at 13 through 14).  This assertion is specious.  Plaintiff alleges that the Charts purported to show that customers' accounts under Frankel's management and control had out-performed the market by 45% in the prior three years. (Complaint at ¶16), and, that the Charts falsely reported that a $10 million investment in 1995 was worth $32,297,801 on March 31, 1999 (Complaint at ¶18).  Based upon her reliance on this false information, Plaintiff alleges that she allowed Frankel to maintain discretionary control over her Account (Complaint at ¶3 and Exhibit A to the

Complaint) and to charge Plaintiff substantially higher than normal commission charges. (Complaint at ¶25).

Defendants argue that Plaintiff's allegation that Frankel told Plaintiff that Frankel had a Ph.D. cannot support a fraud claim because Plaintiff fails to allege that this credential was material to her decision to open the Account.  (Defendants' Memo at 14).  This argument is also specious.  Plaintiff did allege that this lie was material to her decision to turn over her assets to Frankel's discretionary control.  (See, for example, Complaint at ¶¶ 3, 25).

Defendants argue that Plaintiff fails to allege any facts suggesting that the purported misstatements proximately caused Plaintiff's injury.  (Defendants' Memo at 14).  This is yet another specious argument.  Plaintiff repeatedly asserts throughout the Complaint that, solely in reliance upon Frankel's misrepresentations, she transferred funds from the management of a broker she knew and trusted and turned substantial assets over to Frankel's discretionary control, she allowed Frankel to maintain this discretionary control over her Account, and she allowed Frankel to retain discretionary control over Plaintiff's assets at Lehman Brothers after Frankel accepted employment with that firm and Plaintiff's portfolio was transferred, intact, in January 2001 to Lehman Brothers.  (Complaint at ¶¶ 2, 3, 4, 16, 17, 18, 29, 31, 32, 33, 34, and 35).  The Complaint further asserts that, as a direct result of Frankel's having obtained discretionary control over Plaintiff's Account, Frankel was able to trade Plaintiff's Account as Frankel wished, to overcharge Plaintiff commissions, markups and markdowns, and use excessive margin, among other wrongful acts, charging Plaintiff's Account a total of $102,069, and, as a result of this, Plaintiff suffered more than $435,000 in out-of-pocket losses.

Defendants argue that the Complaint failed to allege that Plaintiff's losses *were not* the result of an intervening cause, namely the 2000 internet and technology bubble burst.

23

(Defendants' Memo at 15). Plaintiff, however, is not required to <u>prove</u> in her Complaint that her losses were the proximate result of Frankel's misrepresentations, rather than the market conditions. This is an issue of fact. Tellingly, the case to which Defendants cite in support of their argument that Plaintiff's charts and Ph.D. claims should be dismissed, *Nat'l Commer. Bank v. Morgan Stanley Asset Mgmt. Inc.*, 1997 U.S. Dist. LEXIS 15921 (S.D.N.Y. Oct. 15, 1997), involves a decision on a motion for summary judgment, and not, as here, a motion to dismiss. *Nat'l Commer. Bank* is not at all on point.

To plead a common law fraud claim under New York law, a plaintiff must allege "a material false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff." *S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996) (quoting *Katara v. D.E. Jones Commodities*, 835 F.2d 966, 970-71 (2d Cir. 1987)). Defendants' argument that the market conditions were an intervening cause of Plaintiff's losses is based upon conjecture because it is premised on factual assumptions by Defendants that lie wholly outside the pleadings.

Plaintiff adequately stated a claim for fraud based upon the fraudulent statements specifically alleged in the Complaint at Paragraphs 1, 2, 3, 15, 16, 17, 18, 19, 20, 21, 22, 23, 25 and 32. In their Motion to Dismiss, Defendants argue that the portion of Plaintiff's fraud claims based on transactions in Plaintiff's Account should be dismissed because Plaintiff does not allege that Defendants made any misrepresentations to her in connection with any transaction in her Account and Plaintiff's allegations about the transactions in her Account are duplicative of her breach of contract claim. (Defendants' Memo at 16). Contrary to what Defendants argue, Plaintiff does allege that misrepresentations were made to her by Defendants related to transactions in her Account. Furthermore, Plaintiff's allegations related to transactions in her

Account are sufficiently distinct from her breach of contract claim, and as such, should not be deemed duplicative of the breach of contract claim.

Plaintiff does allege that misrepresentations and omissions were made directly to her in connection with the transactions in her Account, in addition to the Ph.D. and Charts misrepresentations. In effecting unauthorized transactions in new issues in Plaintiff's Account, hiding improper methods to allow for excessive charges to Plaintiff's Account, and in engaging in the "strategy" of holding losses while taking profits, Defendants *omitted* to inform Plaintiff of this material information. "To sustain a cause of action alleging fraud, a party must show a misrepresentation or a material *omission* of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material *omission*, and injury" *Cayuga Partners, LLC v 150 Grand, LLC*, 305 A.D.2d 527, 527-528, 759 N.Y.S.2d 347 (2d Dep't 2003); *see Caniglia v Chicago Tribune-N.Y. News Syndicate Inc.*, 204 A.D.2d 233, 234, 612 N.Y.S.2d 146 (1st Dep't 1994) (emphasis added). Had Plaintiff been informed of these omissions, she would have severed her relationship with Defendants. Furthermore, Frankel represented to Plaintiff that she would exercise discretion properly. By engaging in unauthorized transactions in new issues, overcharging commissions and other charges, and using an undisclosed investment "strategy" of holding losses while taking short-term profits, Frankel did not exercise discretion properly. Plaintiff's allegations concerning misrepresentations and omissions made to her by Defendants related to transactions in her Account are contained in Paragraphs 15, 20, 28, and 32.

Defendants argue that all of Plaintiff's allegations about the transactions in her Account detail alleged flaws in Goldman's performance of its agreements with her and are therefore duplicative of her breach of contract claim. (Defendants' Memo at 16). Plaintiff's fraud claims

related to the transactions in her Account are sufficiently distinct from the breach of contract claim. Here, the alleged misrepresentations related to transactions in the Account were not collateral or extraneous to the contract. Furthermore, as Plaintiff specifically alleges, Defendants had legal duties separate from the duty to perform under the contract, such as Defendants' fiduciary duties owed to Plaintiff. Moreover, even if it could be found, as Defendants argue, that there is no contract between Plaintiff and Frankel, such a finding would not necessitate a dismissal of Plaintiff's fraud claim against Frankel.

Pursuant to New York CPLR § 3014, causes of action may be stated alternatively. While a claim for fraud will not lie if the claim is duplicative of a claim for breach of contract, e.g., the breach of contract *is* the fraud, parallel fraud and contract claims may be brought where the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral to or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages. *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, 98 F.3d 13, 20 (2d Cir. 1996). Plaintiff has satisfied this requirement. As is discussed in more detail below, Plaintiff alleged that Frankel, as Plaintiff's financial advisor with discretionary control over Plaintiff's Account, owed Plaintiff fiduciary duties *in addition to* any contractual duties Frankel may have owed Plaintiff. (Complaint at ¶¶42 through 45).

Plaintiff also adequately stated a cause of action based on analysts' reports and transactions in eToys. Contrary to what is asserted by Defendants, Plaintiff (i) did specify the statements that Plaintiff contends were fraudulent, (ii) adequately pleaded fraudulent intent, and (iii) adequately pleaded that Defendant Goldman, Sachs acts were the cause of her losses. Plaintiff's allegations with respect to stock purchased for her Account by Frankel which were the

subject of the settlement Goldman Sachs made with the United States Securities and Exchange Commission ("SEC") and with the New York Attorney General regarding the false reports issued by Goldman Sachs analysts and with respect to the eToys stock purchased for her Account by Frankel involved non-disclosure on the part of Defendants as to the conflicts of interest inherent in the relationships Goldman, Sachs had with their customers, their investment banking clients.  Goldman, Sachs profited greatly from these relationships, while customers such as Plaintiff suffered losses as a result thereof.

At Paragraph 22 of the Complaint, Plaintiff specifically asserts that she lost $70,470 in two specific stocks, WorldCom and Global Crossing, listed in the settlement Goldman, Sachs made with the SEC and with the New York Attorney General regarding the false reports issued by Goldman, Sachs analysts.  Plaintiff's Exhibit B, containing the SEC Litigation Release and the SEC Complaint against Goldman, Sachs and Final Judgment as to Goldman, Sachs, is incorporated into the Complaint and contains adequate information related to the false statements in the analyst reports and the fraudulent intent of Defendant Goldman, Sachs.[2]  On a motion to dismiss, beyond the facts set forth in the complaint, the Court may consider "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Cortec Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). In Paragraph 23 of the Complaint, Plaintiff alleges that Defendants sold to Plaintiff approximately 3,000 shares of eToys, Inc. stock in or around October 1999, for which Plaintiff paid approximately $215,750.  As alleged in Paragraphs 23 and 32 of the Complaint:  Plaintiff ultimately suffered losses of approximately $137,940 on these shares.  In selling eToys, Inc. stock to Plaintiff, Defendants failed to disclose to Plaintiff the conflict of interest existing with

---

[2] To the extent that Defendants argue that consent orders, such as the Settlement Agreement, are inadmissible to prove liability in a subsequent case, this is an evidentiary argument.  Plaintiff references the details in the Settlement Agreement as part of her allegations of fact, subject to proof at trial.

respect to agreements entered into by Goldman, Sachs with certain Goldman, Sachs customers to share in profits made following the initial public offering of eToys, Inc.; and, such agreements had a manipulative effect on the price of the security, driving it up from its $20 per share offering price to the almost $72 per share price at which the stock was sold to Plaintiff. Plaintiff attached as Exhibit C to the Complaint a copy of the decision in *EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 799 N.Y.S.2d 170 (2005)*, and the information set forth therein is incorporated into the Complaint.

In opposition to what Defendants assert, Plaintiff is not subject to fraud on the market pleading requirements where she had direct dealings as a customer of the Defendants. The case law cited by Defendants in support of its proposition that Plaintiff failed to show that her losses were the direct result of the matters at issue in the Settlement Agreement or the eToys conflict of interest, *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir.), *cert. denied*, 545 U.S. 935 (2005), involved a class action and was subject to the fraud on the market pleading requirements for loss causation, which are not applicable here where there were face-to-face transactions where Defendants made misrepresentations or omissions directly to Plaintiff, its own customer. The fraud on the market theory of reliance is applicable where the transactions are not face-to-face, and the market is interposed between the buyer and seller. As noted by the Supreme Court, it is impractical to require that reliance in a face-to-face transaction be established in the same way it is in an open market transaction. See *Basic Inc. v. Levinson, 485 U.S. 224, 244, 108 S. Ct. 978 (1988).*

Defendants' attempts to reduce Plaintiff's fraud claim to separate and distinct misrepresentations, omissions and acts, each of which should be examined in a vacuum, should be rejected by this Court. Frankel's fraud upon Plaintiff should be viewed organically because of

the continuing relationship between Plaintiff and Frankel.  When this fraud is viewed in its entirety, the allegations are that Frankel made misrepresentations to Plaintiff in order to induce Plaintiff to transfer more than two million dollars of money to Goldman, Sachs and give Frankel discretionary control over Plaintiff's money, and once discretionary control was obtained, there followed a series of misrepresentations and omissions by Frankel regarding commissions charged to the Account, improper practices as to new issues, and utilization of an undisclosed investment "strategy" of holding losses while taking profits.  Plaintiff has specifically pleaded her justifiable reliance and has alleged hundreds of thousands of dollars in damages that Plaintiff would not have suffered had she not been convinced by Frankel's lies to transfer her money to Frankel's control.

**B.      Plaintiff Adequately States a Claim for Breach of Contract**

Defendants argue that Plaintiff has not met the requirements for pleading breach of contract because Plaintiff does not allege how Defendants breached any contract they had with her, that Plaintiff did not allege the essential elements of damages, and that Plaintiff failed to allege proximate causation.  As set forth below, these arguments are also specious.

Defendants argue that Plaintiff did not allege how Defendants breached any contract they had with her because Plaintiff did not point to a single rule, custom, law or regulation that the transactions in her Account violated.  (Defendants' Memo at 22).  Plaintiff is not required to plead every single rule, custom, law or regulation that the transactions in her Account violated. Plaintiff did specifically allege that the transactions in her Account, which included holding losses and taking profits, excessive commissions, and unauthorized trading, were in breach of specific contractual duties owed to Plaintiff by Defendants, such as the contractual duties of good faith and fair dealing, the contractual duty to know your customer, and duties set forth in

those provisions of the contracts which incorporated the rules, regulations, usages and customs of the applicable exchanges, and market or clearing houses.  (Complaint at ¶¶ 37 through 41).  Plaintiff satisfied the requirements for pleading a breach of contract action because she alleged specific agreements that she had with Defendants and the specific provisions which were breached by Defendants.  Plaintiff is not required to further cite to every other rule and regulation incorporated in the contracts at issue.

Defendants further argue that Plaintiff did not allege how Defendants breached the Trading Authorization because the Trading Authorization contains a provision whereby Plaintiff agrees to modification of the discretionary trading policies without consent or notice to Plaintiff.  (Defendants' Memo at 22).  Any modification of the Trading Authorization agreed to by Plaintiff, however, would necessarily be required to comply with Goldman Sachs' policies and procedures as to applicable discretionary transactions *and* with the applicable regulatory and exchange rules and regulations.  Defendants allege that Defendants modified their discretionary trading policies in a manner which would have allowed Frankel to execute purchases of securities where Goldman, Sachs was a participant in the registered public offering on a discretionary basis, and as a result of this modification, Plaintiff's breach of contract action fails.  At best, this is an issue of fact which would, at the least, require discovery before any determination could be made.  It is respectfully submitted, however, that Defendants would not be able to demonstrate a modification of the Trading Authorization which was in compliance with Goldman, Sachs' policies and procedures and the applicable regulatory and exchange rules and regulations.

Defendants further argue that Plaintiff did not allege the essential element of damages with respect to Plaintiff's breach of contract action.  (Defendants' Memo at 23).  Plaintiff

repeatedly alleged in the Complaint that she was damaged by those acts of Defendants which are the bases for Plaintiff's breach of contract claim (Complaint at ¶¶ 2, 19, 21 and 25).

Defendants argue that because Plaintiff does not allege any damages, she does not allege that any of Defendants' breaches proximately caused her damages. As set forth above, Plaintiff did, in fact, allege damages. Moreover, where Plaintiff alleged such damages in the Complaint, as referenced above, she also adequately alleged causation.

Lastly, Defendants assert that Plaintiff cannot maintain a breach of contract action against Frankel because Plaintiff does not (and cannot) allege that she ever entered into a contract with Frankel. (Defendants' Memo at 23). This claim is belied by the fact that Plaintiff specifically alleges that Defendants breached provisions of the Trading Authorization, an agreement which the Defendants know the applicable rules required Frankel to sign in order to gain written discretionary authority and control over the Account.

For the foregoing reasons, Plaintiff adequately pleaded her breach of contract action, and Defendants' motion to dismiss Plaintiff's breach of contract action should be denied.

### C.    Plaintiff Adequately Pleaded Her Breach of Fiduciary Duties Claim

Defendants assert that Plaintiff's claim for breach of fiduciary duties fails because it is preempted by the Martin Act and because Plaintiff failed to allege any facts that show her losses were caused by Defendants' conduct rather than by the decline in the stock market in 2000[3]. (Defendants' Memo at 23 through 24). For the below discussed reasons, these arguments fail.

---

[3] Defendants' argument that Plaintiff's breach of fiduciary duties claim fails because Plaintiff did not allege any facts that show her losses were caused by Defendants' conduct rather than by the decline in the stock market in 2000 fails for the very same reasons that Defendants' similar argument with respect to Plaintiff's fraud claim fails, and warrants no extended discussion here. Determination of whether Plaintiff's losses were proximately caused by Defendants' wrongful acts or market conditions is a question of fact, and, as such, cannot be resolved at this stage. If Plaintiff did not suffer similar losses in an account managed by another advisor, that alone would disprove Defendants' argument.

Included in their hodge-podge of spurious arguments, Defendants assert that New York's Martin Act precludes Plaintiff from bringing a claim for breach of fiduciary duties. Not only is this assertion a distortion of the Martin Act and its interpretation by courts, it is illogical and in direct disagreement with case law. An investor *can* assert the common law cause of action of breach of fiduciary duties. What the Martin Act prohibits is direct private rights of action *under* the Act. Plaintiff has not brought any claims *pursuant to* the Martin Act. Plaintiff's fiduciary duties claim is not related to the Martin Act or any other statute – it is a common law claim which Plaintiff has every right to bring. Defendants' motion to dismiss based upon the asserted preclusion of the fiduciary duty claim by the Martin Act should be denied.

New York State's securities law, the Martin Act, is codified in Gen. Bus. L. §§ 352 through 359. The Martin Act provides a statutory scheme for the registration of all who offer or sell securities to the public in or from the State of New York. The Martin Act, which was adopted in 1921, was amended in 1955, resulting in the addition of § 352-c(1), which proscribed any "fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale; any promise or representation as to the future which is beyond reasonable expectation or unwarranted by existing circumstances; and any false statement or representation related to the issuance, distribution, exchange, sale, negotiation, or purchase of securities or commodities." Gen. Bus. L. §352-c(1). Violation of these provisions became a misdemeanor, and also became subject to the penalties prescribed in the Penal Law.

No private right of action exists under the Martin Act. *See CPC Int'l Inc. v. McKesson Corp., 70 N.Y.2d 268, 514 N.E.2d 116 (1987).* The attorney general is the sole individual who can invoke the statute's remedial provisions. In its Motion to Dismiss, Defendants wrongly assert that "[t]he Martin Act is a New York state law that gives the Attorney General the

exclusive authority to combat securities fraud and other related claims."  The Martin Act gives

the Attorney General exclusive authority to invoke the statute, and not, as Defendants assert,

exclusive authority to combat securities fraud and any other related claims a customer may have

against the broker managing her account.

Defendants falsely assert that a common law breach of fiduciary duties claim is precluded

by the Martin Act.  In making their argument, Defendants fail in their obligation to inform the

Court of the split among the courts with respect to this issue.  As discussed by Judge Denise Cote

in *Cromer Fin. Ltd. v. Berger*, the New York Court of Appeals "has not determined whether the

Martin Act preempts claims made under common law" and "New York's lower courts are split."

2001 U.S. Dist. LEXIS 14744 (S.D.N.Y. Sept. 19, 2001).  In deciding that the plaintiffs'

negligence claims were not precluded by the Martin Act, Judge Cote noted that "[w]hile other

federal courts have dismissed common law claims as precluded by the Martin Act . . . there is

nothing in either of the New York Court of Appeals cases cited above or in the text of the Martin

Act itself to indicate an intention to abrogate common law causes of action."  *Cromer*, 2001 U.S.

Dist. LEXIS 14744, at *14-15.  Judge Cote's decision referenced the logic employed by the

Fourth Department in *Scalp & Blade, Inc. v. Advest, Inc.*, 281 A.D.2d 882, 722 N.Y.S.2d 639

(4th Dep't 2001).  In that decision the court upheld common law claims, noting that "nothing in

the Martin Act, or in the Court of Appeals cases construing it, precludes a plaintiff from

maintaining common-law causes of action based on such facts as might give the Attorney

General a basis for proceeding civilly or criminally against a defendant under the Martin Act."

*Id*., at 640.

In baldly asserting that Plaintiff's claims are barred by the Martin Act, Defendants fail to

acknowledge the difference between statutory law and common law.  In addition to the varied

securities rules and regulations enacted by state and federal statutes, there is a large body of case law, decisions by judges, which impact on the securities industry. There are, for example, the common law concepts of common law fraud and fiduciary duties. Additionally, the common law notions of contract also find their way into the securities laws. If an investor wishes to pursue a claim related to securities violations, he or she can do so under a variety of common law claims, including fraud, breach of contract and breach of fiduciary duties, without invoking the Martin Act.[4] This right of investors to bring common law claims related to their investments is evidenced in the decisions rendered in New York in which common law claims are made by plaintiffs. It is further evidenced by established treatises on the subject, including *McKinneys Consolidated Laws of New York*[5], and Norman S. Poser's *Broker-Dealer Law and Regulation*[6].

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiff's breach of fiduciary duties claims should be denied.

## IV.    IF THE COURT DOES NOT DISMISS PLAINTIFF'S CLAIMS, IT SHOULD ALLOW THIS MATTER TO PROCEED BEFORE THE COURT AND SHOULD NOT DIRECT THE PARTIES TO ARBITRATION

As one final argument, Defendants contend that if the Court does not dismiss Plaintiff's claims, it should direct the parties to arbitration. In light of the previous determinations of the Panel and of this Court and the entirely different standards for determining eligibility pursuant to the FINRA Six Year Rule and statutes of limitations issues pursuant to New York law, discussed in detail in Section I of this Memorandum, this argument is illogical and should be rejected by this Court.

In its May 16, 2007 Memorandum and Order, attached to the Dell Declaration as Exhibit D, this Court specifically held that under the Federal Arbitration Act and the governing case law,

---

[4] *See generally McKinney's Consolidated Laws of New York Annotated*, Book 19, 59-69, 1996.
[5] *Id.*
[6] Norman S. Poser, *Broker-Dealer Law and Regulation – Private Rights of Action*, 185-191, 1995.

the issue of whether Plaintiff's claims were barred by any New York statute of limitation was for the arbitrator, and not this Court, to determine. The Panel, however, never entertained New York limitations issues in rendering their decision to grant Defendants' motion to dismiss because the Panel found that FINRA Six Year Rule precluded Plaintiff from arbitrating in its forum.

As discussed in Section I above, under FINRA Rule 10304(b), when a claim is dismissed under the Six Year Rule, it can be entertained in court, applicable law permitting. This makes sense, because a claim will be ineligible for FINRA arbitration when the arbitration panel decides that six years has passed from the date of the transaction, whereas, such a claim may be completely viable in state court, which will calculate different methods of accrual of claims for statute of limitations purposes, and which allows for the tolling of such limitations periods.

The Panel decided it would not hear Plaintiff's claims. Absent a reversal of the Panel's decision upon a motion by Defendants, the Panel's decision stands. Defendants do not seek a reversal of the Panel's decision. Having agreed to abide by FINRA Rule 10304(b), Defendants cannot argue that Plaintiff is barred from litigating her claims in court – a result that the Panel specifically stated, on the record, would be her right under that Rule.

## CONCLUSION

For the above discussed reasons, Plaintiff respectfully requests that the Defendants' motion to dismiss be denied in its entirety.

Dated: New York, New York
       June 30, 2008

**LAW OFFICES OF DAN BRECHER**

_____/s/ Dan Brecher_____
Dan Brecher (DB-5308)
99 Park Avenue, 16th Floor
New York, NY 10016
(212) 286-0747
Attorneys for Plaintiff