UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

KATHERINE GRIFFIN, individually and as
trustee of the Katherine Griffin Living Trust,

                  Plaintiff,

       v.

GOLDMAN, SACHS & CO. and
SOFIA FRANKEL,

               Defendants.

———————————————————————— x

:   08 Civ. 2992 (LMM)

:   ECF CASE

# DEFENDANTS GOLDMAN, SACHS & CO. AND SOFIA FRANKEL'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

KL3 2669341.3

Table of Contents

Page

TABLE OF AUTHORITIES .................................................................................... iii

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ............................................................................................................ 1

I.     PLAINTIFF'S CLAIMS ARE BARRED BY COLLATERAL
ESTOPPEL ..................................................................................................... 1

II.    EVEN IF PLAINTIFF'S CLAIMS WERE NOT BARRED BY
COLLATERAL ESTOPPEL THEY WOULD BE TIME-BARRED ............... 4

     A.    Plaintiff's Breach of Fiduciary Duty Claim is Governed by a
Three-Year Statute of Limitations ......................................................... 5

     B.    Plaintiff's Claims Accrued at the Time of the Alleged Wrongful
Conduct .................................................................................................. 6

     C.    The "Continuous Representation" Doctrine Does Not Apply Here ....... 7

     D.    The Doctrine of Fraudulent Concealment Is Inapplicable Here ............ 8

III.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM ......................... 9

     A.    Plaintiff Fails To State A Claim For Fraud ........................................... 9

           1.    Plaintiff Fails To State A Claim For Fraud Based On
Statements At The "Initial Meeting" ...................................... 10

           2.    Plaintiff Fails To State A Claim For Fraud Based On
Transactions In Her Account Or "Holding Losses While
Taking Profits" ........................................................................ 12

           3.    Plaintiff Fails To State A Claim For Fraud Based On
"Analyst Reports" And eToys ................................................. 14

           4.    Plaintiff Fails To State A Claim For Fraud Based On
Allegations That Ms. Frankel Represented She Was A
Knowledgeable, Experienced Broker And Had Plaintiff's
Best Interests At Heart ............................................................ 15

     B.    Plaintiff Fails To State A Claim For Breach Of Contract ..................... 16

     C.    Plaintiff Fails To State A Claim For Breach Of Fiduciary Duty ......... 17

i

IV.   IF THE COURT DOES NOT DISMISS PLAINTIFF'S CLAIMS, IT
      SHOULD DIRECT THE PARTIES TO ARBITRATION ............................................ 19

CONCLUSION ........................................................................................................................ 19

KL3 2669341.3

# TABLE OF AUTHORITIES

## CASES

*511 West 232nd St. Owners Corp. v. Jennifer Realty Co.*,
  98 N.Y.2d 144, 746 N.Y.S.2d 131 (2002) ............................................................16

*In re Acquino's Will*,
  187 Misc. 7, 58 N.Y.S.2d 63 (N.Y. Surr. Co. 1945) ........................................9 n.7

*Alevizopoulous & Assoc. v. Comcast Int'l Holdings, Inc.*,
  100 F. Supp. 2d 178 (S.D.N.Y. 2000) .............................................................9 n.7

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988)........................................................................................15 n.11

*Bibeault v. Advanced Health Corp.*,
  No. 97 Civ. 6026, 1999 U.S. Dist. LEXIS 7173 (S.D.N.Y. May 12, 1999)...................18 n.12

*Bissell v. Merrill Lynch & Co., Inc.*,
  937 F. Supp. 237 (S.D.N.Y. 1996) .................................................................13 n.10

*Bridgestone/Firestone Inc. v. Recovery Credit Services*,
  98 F.3d 13 (2d Cir. 1996) .....................................................................................14

*CPC Int'l Inc. v. McKesson Corp.*,
  70 N.Y.2d 268, 519 N.Y.S.2d 804 (1987).............................................................18

*Castellano v. Young & Rubicam, Inc.*,
  257 F.3d 171 (2d Cir. 2001) .................................................................................18

*Coleman & Co. Sec., Inc. v. Giaquinto Family Trust*,
  236 F. Supp. 2d 288 (S.D.N.Y. 2002) .............................................................9 n.7

*Cromer Fin. Ltd. v. Berger*,
  00 Civ. 2284, U.S. Dist. LEXIS 14744 (S.D.N.Y. Sept. 19, 2001)........................17

*Dujardin v. Liberty Media Corp.*,
  359 F. Supp. 2d 337 (S.D.N.Y. 2005) ..................................................................18

*Dymm v. Cahill*,
  730 F. Supp. 1245 (S.D.N.Y. 1990) ...........................................................7, 9 n.7

*EBC I, Inc. v. Goldman, Sachs & Co.*,
  5 N.Y.3d 11, 799 N.Y.S.2d 170 (2005)..............................................................8, 15

KL3 2669341.3

*First Lincoln Holdings, Inc. v. The Equitable Life Assurance Society,*
    164 F. Supp. 2d 383 (S.D.N.Y. 2001) ................................................................16

*Frank Mgmt., Inc. v. Weber,*
    145 Misc. 2d 995, 549 N.Y.S.2d 317 (Sup. Ct. N.Y. Co. 1989) ...........................5

*Friedman v. Wheat First Sec.,*
    64 F. Supp. 2d 338 (S.D.N.Y. 1999) ..........................................................3, 4 n.3

*Gabriel Capital, L.P. v. Natwest Fin., Inc.,*
    137 F. Supp. 2d 251 (S.D.N.Y. 2000) .........................................................18 n.12

*Gale P. Elston, P.C. v. Dubois,*
    18 A.D.3d 301, 795 N.Y.S.2d 33 (1st Dep't 2005)................................................3

*Ganino v. Citizens Util. Co.,*
    228 F.3d 154 (2d Cir. 2000) ...............................................................................12

*Gant v. Wallingford Bd. of Educ.,*
    69 F.3d 669 (2d Cir. 1995) .................................................................................11

*In re Gen. Dev. Corp. Bond Litig.,*
    800 F. Supp. 1128 (S.D.N.Y. 1992) ......................................................................8

*Ghandour v. Shearson Lehman Bros. Inc.,*
    213 A.D.2d 304, 624 N.Y.S.2d 390 (1st Dep't 1995)...........................................3

*Gordon v. Dino De Laurentiis Corp.,*
    141 A.D.2d 435, 529 N.Y.S.2d 777 (1st Dep't 1988)..........................................17

*Hughes v. J.P. Morgan Chase,*
    01 Civ. 6087, 2004 U.S. Dist. LEXIS 11497 (S.D.N.Y. June 22, 2004)................7

*Individual Sec Ltd. v. Ross,*
    152 F.3d 918 (2d Cir. 1998) .........................................................................4 n.3

*In re Mac Robbins Co.,*
    1962 SEC LEXIS 555 (1962).........................................................................6 n.5

*Joseph Francese, Inc. v. Enlarged City School Dist. of Troy,*
    95 N.Y.2d 59, 710 N.Y.S.2d 315 (2000)..............................................................4 n.3

*Kaufman v. Cohen,*
    307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003)........................................6, 9

*Kaufman v. Eli Lilly & Co.,*
    65 N.Y.2d 449, 492 N.Y.S.2d 584 (1985)..............................................................2

iv

*Klein v. Spear, Leeds & Kellogg,*
    306 F. Supp. 743 (S.D.N.Y. 1969) ................................................................9 n.7

*Lentini v. Lentini,*
    280 A.D.2d 330, 720 N.Y.S.2d 464 (1st Dep't 2001).............................................2

*Marcus v. Frome,*
    329 F. Supp. 2d 464 (S.D.N.Y. 2004) ...........................................................18 n.12

*Matusovsky v. Merrill Lynch,*
    186 F. Supp. 2d 397 (S.D.N.Y. 2002) ................................................................11

*Mazella v. Markowitz,*
    303 A.D.2d 564, 756 N.Y.S.2d 470 (2d Dep't 2003) ............................................2

*McCoy v. Feinman,*
    99 N.Y.2d 295, 755 N.Y.S.2d 693 (2002)......................................................7 n.6

*McDaniel v. Bear Stearns & Co.,*
    196 F. Supp. 2d 343 (S.D.N.Y. 2002) ...........................................................6 n.5

*McDermott v. Torre,*
    56 N.Y.2d 399, 52 N.Y.S.2d 351 (1982).........................................................7 n.6

*Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.,*
    02 Civ. 1230, 2002 U.S. Dist. LEXIS 16995 (LMM) (S.D.N.Y. Sept. 10, 2002)..........18 n.12

*Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC,*
    02 Civ. 0767, 2003 U.S. Dist. LEXIS 15206 (S.D.N.Y. Sept. 2, 2003)................................18

*Nat'l Commercial Bank, v. Morgan Stanley Asset Mgmt. Inc.,*
    94 Civ. 3167, 1997 U.S. Dist. LEXIS 15921 (S.D.N.Y. Oct. 15, 1997) ...............................12

*Perkins v. Perkins,*
    226 A.D.2d 610, 641 N.Y.S.2d 396 (2d Dep't 1996) .............................................4

*Pope v. Saget,*
    29 A.D.3d 437, 817 N.Y.S.2d 1 (1st Dep't 2006)................................................10

*Prestandrea v. Stein,*
    262 A.D.2d 621, 692 N.Y.S.2d 689 (2d Dep't 1999) .............................................2

*Rapoport v. Asia Electronics,*
    88 F. Supp. 2d 179 (S.D.N.Y. 2000) ..................................................................11

KL3 2669341.3

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000) ...................................................................13 n.10

*SEC v. Jones*,
    05 Civ. 7044, 2006 U.S. Dist. LEXIS 22800 (S.D.N.Y. April 25, 2006)..........................9 n.7

*Sargiss v. Magarelli*,
    50 A.D.3d 1117, 858 N.Y.S.2d 209 (2d Dep't 2008) ...........................................................2

*Scalp & Blade, Inc. v. Advest. Inc.*,
    281 A.D.2d 882, 722 N.Y.S.2d 639 (4th Dep't 2001) ..........................................................17

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
    03 Civ. 3120, 2005 U.S. Dist. LEXIS 16382 (S.D.N.Y. Aug. 9, 2005) .........................18 n.12

*Spirit Partners, L.P. v. audiohighway.com*,
    99 Civ. 9020, 2000 U.S. Dist. LEXIS 7236 (S.D.N.Y. May 25, 2000).........................18 n.12

*Standish-Parkin v. Lorillard Tobacco Co.*,
    12 A.D.2d 301, 786 N.Y.S.2d 13 (1st Dep't 2004)...........................................................9 n.7

*In re Sumitomo Copper Litig.*,
    120 F. Supp. 2d 328 (S.D.N.Y. 2000) .............................................................................9 n.7

*Varnberg v. Minnick*,
    760 F. Supp. 315 (S.D.N.Y. 1991) .....................................................................................5

*Water St. Leasehold LLC v. Deloitte & Touche LLP*,
    19 A.D.3d 183, 796 N.Y.S.2d 598 (1st Dep't 2005).......................................................15 n.11

## STATUTES AND RULES

CPLR 213.............................................................................................................................5 n.4

Fed. R. Civ. P. 9(b) ..............................................................................................................10

N.Y. Gen. Bus. Law 352 ................................................................................ 17, 18 & n.12

Rule 12(b)(6)........................................................................................................................11

Rule 10304 .................................................................................................. 1, 2 & n.1, 4 & n.3

Rule 10307(a)..........................................................................................................................3

KL3 2669341.3

## PRELIMINARY STATEMENT

Defendants' opening brief showed that plaintiff's claims are barred by collateral estoppel, are time-barred, and fail to state a claim. Plaintiff's opposition brief is long on rhetoric, name-calling, and obfuscation; but such tactics cannot save a defective pleading.

## ARGUMENT

## I.    PLAINTIFF'S CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL

Defendants' opening brief demonstrated (at 4-6) that plaintiff is collaterally estopped from relitigating the issue of when her claims accrued because the arbitration panel *necessarily* found, in dismissing her claims under NASD Rule 10304, that more than six years elapsed between the events giving rise to her claims and her commencement of the arbitration. Plaintiff does not dispute that the arbitration panel made this finding, or that she had a full and fair opportunity to litigate this issue in that proceeding. Moreover, she concedes (i) that her claims here arise out of the same occurrences as her arbitration claims, and (ii) that decisions of arbitrators have the same preclusive effect as court decisions.

Nevertheless, plaintiff argues that she should not be collaterally estopped because Rule 10304 is a "substantive eligibility requirement" while the New York statutes of limitations are "procedural requirements." (Br. 4) But that difference does not limit the collateral estoppel effect of the arbitration panel's Award, and plaintiff gives no reason why it should. As expressed by the New York Court of Appeals:

> There are now but two requirements which must be satisfied before the doctrine [collateral estoppel] is invoked. First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination.

*Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455, 492 N.Y.S. 2d. 584, 588 (1985). It is

undisputed (and indisputable) that both requirements are met here. Plaintiff is thus estopped

from now relitigating when her claims accrued, whether that issue is viewed as an "eligibility

requirement" or a "procedural requirement."[1]

        Plaintiff also argues that the arbitration panel's finding does not compel dismissal

of her claims because the statute of limitations period applicable to her fraud and breach of

fiduciary duty claims is longer than the six years prescribed by NASD Rule 10304 as CPLR

213(8) allows fraud claims to be brought within two years of "actual or imputed discovery" of

the fraud. (Br. 5) But CPLR 213(8) cannot help plaintiff here because she has not met her

burden of pleading that she could not have discovered the "fraud" with reasonable diligence

more than two years before she commenced this action. *See Sargiss v. Magarelli*, 50 A.D.3d

1117, 858 N.Y.S.2d 209 (2d Dep't 2008) (fraud claim was time-barred where plaintiff failed to

show the fraud "could not reasonably have been discovered until the two-year period before the

commencement of the action"); *Mazella v. Markowitz*, 303 A.D.2d 564, 564, 756 N.Y.S.2d 470,

471 (2d Dep't 2003). Nor could she. The gravamen of her complaint is that defendants' "fraud"

resulted in losses in her brokerage account. (Cplt. ¶¶ 1-4) But there is no dispute that

defendants' trade confirmations and monthly statements fully disclosed those losses to plaintiff

when they occurred in 1999 and 2000. *See, e.g., Lentini v. Lentini*, 280 A.D.2d 330,

720 N.Y.S.2d 464 (1st Dep't 2001); *Prestandrea v. Stein*, 262 A.D.2d 621, 622, 692 N.Y.S.2d

---

[1]    It is a red herring for plaintiff to point to NASD Rule 10304(b)'s statement that the dismissal of an arbitration claim under the six-year rule of 10304(a) "does not prohibit a party from pursuing the claim in court." (Br. 6, 8) The rule does not authorize plaintiffs to bring time-barred claims in court nor relieve them of collateral estoppel. The actual purpose of Rule 10304(b) is to protect claimants from having to bifurcate their claims between arbitration and court when only some of their claims are eligible for arbitration under 10304. *See* SEC Release No. 34-38255, July 25, 2003.

KL3 2669341.3

689, 691 (2d Dep't 1999); *Ghandour v. Shearson Lehman Bros. Inc.*, 213 A.D.2d 304, 624 N.Y.S.2d 390 (1st Dep't 1995).[2]

Plaintiff's argument that New York law "offers additional extensions and tolls" (Br. 5-6) is irrelevant to the applicability of collateral estoppel to the question *when plaintiff's claims accrued.* Moreover, as shown below (at 7-9) no such extension or toll applies on the facts alleged in the Complaint.

Finally, there is no merit to plaintiff's argument that her claims were tolled by NASD Rule 10307(a) and CPLR 204(b) during the pendency of the arbitration. As plaintiff acknowledges, under Rule 10307(a) NASD arbitrations toll limitation periods only "where permitted by applicable law." (Br. 7) *See Friedman v. Wheat First Sec.*, 64 F. Supp. 2d 338 (S.D.N.Y. 1999) (Rule 10307(a) does not toll statute of limitations unless such tolling is permitted by applicable law). Defendants showed in their opening brief (at 5-6) that CPLR § 204(b) is the New York law that is applicable here and it does not toll plaintiff's limitations periods because there is tolling only where "a party is *not* obligated to submit a claim to arbitration." (Emphasis added) Plaintiff has already argued in this Court that she *was* obligated to submit her claim to arbitration (Ex. C at 9, 11), and this Court upheld that argument (Ex. D). Plaintiff is therefore judicially estopped from taking a different position now. New York law precludes a party "who assumed a certain position in a prior legal proceeding and who secured a judgment in his or her favor from assuming a contrary position in another action simply because his or her interests have changed." *Gale P. Elston, P.C. v. Dubois*, 18 A.D.3d 301, 303, 795 N.Y. S.2d 33, 35 (1st Dep't 2005). Judicial estoppel prevents parties from playing "fast and

---

[2]    Since plaintiff's complaint does not allege anything about when she discovered or could have discovered any alleged fraud, much less allege any facts showing she did not or could not have discovered it within two years before bringing this action, her criticism that defendants "fail to acknowledge the two-year discovery accrual" in their opening brief is puzzling, at best. (Br. 12)

loose." *Perkins v. Perkins,* 226 A.D.2d 610, 641 N.Y.S.2d 396, 397 (2d Dep't 1996). Moreover, contrary to plaintiff's argument (Br. 8), the arbitration panel did not hold that she was not obligated to submit her claims to arbitration -- it ruled those claims were time-barred.[3]

Further, even if CPLR § 204(b) did apply here, it would not help plaintiff because the arbitration panel's dismissal of her claims under Rule 10304 means her claims accrued more than six years before she originally brought the arbitration. Thus, those claims were *already* time-barred by that point, and tolling them during the pendency of the arbitration could not revive *already stale* claims.

## II.    EVEN IF PLAINTIFF'S CLAIMS WERE NOT BARRED BY COLLATERAL ESTOPPEL THEY WOULD BE TIME-BARRED

Defendants' opening brief demonstrated (at 6-11) that even if this Court did not give collateral estoppel effect to the arbitration panel's Award, plaintiff's claims would still be time-barred because they all have limitations periods of six years or less, which run from the date of the "wrongdoing," and her factual allegations all concern either (i) representations at an "initial meeting" in or before July 1999 (Cplt. ¶ 16), well over seven years before plaintiff alleges she filed the arbitration on December 22, 2006 (*id.* ¶ 10) and more than eight years before she filed her Complaint in March 2008, (ii) other representations made more than six years before she filed the arbitration and more than seven years before she filed her Complaint, or (iii)

---

[3]      The cases plaintiff cites on this point do not support her argument. *Friedman, Sec.,* 64 F. Supp. 2d at 338, held CPLR § 204(b) did not toll securities law claims that were governed by federal tolling principles. *Individual Sec Ltd. v. Ross,* 152 F.3d 918 (2d Cir. 1998), found CPLR 204(b) applied because the arbitrators determined that "arbitration is *not* the proper forum," unlike here where this Court found that arbitration *was* the proper forum, and the Panel did not hold that arbitration was not the proper forum but simply that plaintiff's claims "were time-barred under FINRA Rule 10304." (Ex. E at 4) Finally, in *Joseph Francese, Inc. v. Enlarged City School Dist. of Troy,* 95 N.Y.2d 59, 710 N.Y.S.2d 315 (2000), the plaintiff had a contract with the defendant in which the arbitration clause had been deleted but other references to arbitration remained (unlike the agreement here, which *required* arbitration). The plaintiff served a demand for arbitration, which was stayed by the Supreme Court (unlike here, where this Court *denied* a stay). After that stay was affirmed, plaintiff brought an action in court.

trades in plaintiff's account, the last of which occurred on December 19, 2000 (Ex. H at 9), also more than six years before she filed the arbitration.[4]

### A.    Plaintiff's Breach of Fiduciary Duty Claim is Governed by a Three-Year Statute of Limitations

Plaintiff does not dispute that the New York statute of limitations for a breach of fiduciary duty claim that seeks money damages is three (not six) years, as demonstrated in the cases cited in defendants' opening brief (at 5), but argues "a six year statute of limitations applies to a breach of fiduciary duties claim which is based in contract or fraud." (Br. 10) Her point is moot, however, because her claim would be time-barred even if the limitations period was six years. For example, *Varnberg v. Minnick*, 760 F. Supp. 315, 333 (S.D.N.Y. 1991), on which she misplaces reliance, found a breach of fiduciary duty claim was time-barred "because the alleged breach must have occurred prior to the making of each investment." That reasoning would also bar plaintiff's claim since, according to her complaint, Ms. Frankel made her alleged representations about her education and performance before July 23, 1999, far more than six years before plaintiff brought the arbitration and her Complaint. *Frank Mgmt., Inc. v. Weber*, 145 Misc. 2d 995, 999, 549 N.Y.S.2d 317, 320 (Sup. Ct. N.Y. Co. 1989), cited by plaintiff, is also of no help to her because, although the breach of fiduciary duty claim was found to be inextricably linked to a contract, the court ruled "no discovery accrual" applies in a breach of fiduciary duty case, "[n]or should [claimant] benefit from the 'continuing representation' doctrine to toll the application of the limitations period."

Beyond that, plaintiff's conclusory assertion that her claim is "grounded in the contractual relationship between the parties and Defendants' fraudulent acts" is legally

---

[4]    As noted above, CPLR 213(8)'s "discovery exception" to New York's statute of limitations for fraud claims has no bearing here, because the Complaint does not allege any facts suggesting that plaintiff could not have discovered the alleged "fraud" earlier than two years before she brought her Complaint.

5

insufficient to trigger the narrow exception to the three year statute of limitations; that is present only when there is "actual fraud" underlying the breach of fiduciary duty claim. The "breaches" alleged here -- "overcharges" of commissions and a "flawed" trading strategy -- are not conduct that qualifies for a fraud exception, and supposed misrepresentations about Ms. Frankel's performance and education were allegedly made before the fiduciary relationship even started. "'[c]ourts will not apply the fraud statute of limitations if the fraud allegation is only incidental to the claim asserted; otherwise, fraud would be used as a means to litigate stale claims'". *Kaufman v. Cohen*, 307 A.D.2d 113, 119, 760 N.Y.S.2d 157, 165 (1st Dep't 2003). For this reason, neither the six year limitations period for fraud claims, nor the two-year discovery rule of CPLR 213(8), applies to plaintiff's breach of fiduciary duty claim

**B.    Plaintiff's Claims Accrued at the Time of the Alleged Wrongful Conduct**

Plaintiff next argues that "the applicable period as to Goldman, Sachs runs through January 18, 2001, the time when Plaintiff ended her relationship with Goldman, Sachs," and "the applicable six-year period as to all of Plaintiff's claims against Frankel did not begin to run until at least January 2004" (Br. 12-13), although plaintiff does not mention either date in her Complaint. Plaintiff does not cite any authority to support her novel theory that on the facts she pleaded in her Complaint her claims accrued when her relationships with each defendant ended. (Br. 12-13) That too is wrong as a matter of law.[5]

Even if plaintiff's argument was not precluded by the arbitration panel's holding, her Complaint makes clear her claims accrued more than six years before she commenced the arbitration. For example, she alleges that at an "initial meeting" in July 1999 *before* she opened her account, Ms. Frankel made misstatements about her education, prior performance, and that

---

[5]    Plaintiff cites one 46-year old SEC opinion and one case (Br. 13), but neither addresses statutes of limitations. *See In re Mac Robbins Co.,* 1962 SEC LEXIS 555 (1962); *McDaniel v. Bear Stearns & Co.*, 196 F. Supp. 2d 343 (S.D.N.Y. 2002).

she would invest plaintiff's money like her own. (Cplt. ¶ 32(i)-(iv), (xii)) Plaintiff's claims grounded on those allegations accrued in 1999 and were time-barred by September 2005.

Plaintiff's other allegations relate to conduct that occurred no later than December 19, 2000, when, as Plaintiff does not dispute, the last transaction in her account was made. Accordingly, all such claims accrued by December 19, 2000 and were time-barred by December 19, 2006 (or December 19, 2003 in the case of breach of fiduciary duty claims). Plaintiff has not asserted any claims relating to any later period. Indeed, as noted in defendants' opening brief (at 2 n.2), it is undisputed that plaintiff's account *increased* in value between December 22, 2000, six years before the date she claims she filed her Statement of Claim, and January 18, 2001, when she followed Ms. Frankel to Lehman.[6]

### C.    The "Continuous Representation" Doctrine Does Not Apply Here

Defendants' opening brief showed (at 7-10) that the "continuous representation" doctrine does not toll the statutes of limitations here for two reasons: (i) New York state courts have not extended it to stockbrokers such as Ms. Frankel, and (ii) it does not apply to a general relationship, like that between plaintiff and defendants, which was comprised of a series of discrete and severable transactions. Plaintiff does not even respond to defendants' second point, which alone precludes the application of the continuous representation doctrine here.

Plaintiff is also wrong on the first point. Her response ignores the cases limiting the doctrine to professionals who can be sued for malpractice, and relies entirely on *Hughes v. J.P. Morgan Chase,* 01 Civ. 6087, 2004 U.S. Dist. LEXIS 11497 (S.D.N.Y. June 22, 2004), and *Dymm v. Cahill*, 730 F. Supp. 1245, 1264 (S.D.N.Y. 1990), which defendants' opening brief

---

[6]    Plaintiff's argument that the "continuous representation" and "fraudulent concealment" doctrines toll the statutes of limitation do not affect when her claims *accrued. See, e.g., McCoy v. Feinman,* 99 N.Y.2d 295, 301, 755 N.Y.S.2d 693, 697 (2002) (continuous representation doctrine may toll malpractice statute of limitations, but does not affect the *accrual* of the claim); *McDermott v. Torre*, 56 N.Y.2d 399, 407, 452 N.Y.S.2d 351, 354-55 (1982) ("[c]ontinuous treatment serves simply as a toll" and does not delay accrual of the action).

showed (at 9 n.4) were wrongly decided. Indeed, those two federal cases could not, and did not, settle this question of New York law because the New York Court of Appeals subsequently stated in 2005 that it is an "open" question whether a "financial advisor . . . may ever be treated as a professional" for malpractice purposes. *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 23, 799 N.Y.S.2d 170, 177 (2005). Plaintiff does not address the policy considerations which defendants' opening brief showed (at 9 n.5) militate against extending this state law doctrine to brokers such as Ms. Frankel.

### D.    The Doctrine of Fraudulent Concealment Is Inapplicable Here

Defendants' opening brief showed (at 11) that the conclusory allegation in the Complaint about "the Defendants' improper actions in efforts to cover up the fraudulent acts and to keep Plaintiff from learning of the common law fraud Frankel committed upon her" (Cplt. ¶ 4) is utterly insufficient to allege fraudulent concealment sufficient to toll the applicable New York limitations periods. As this Court ruled in *In re Gen. Dev. Corp. Bond Litig.*, 800 F. Supp. 1128, 1142 (S.D.N.Y. 1992) (McKenna, J.), an allegation of fraudulent concealment "must include specific details of activities undertaken by the defendant to keep an already completed fraud from being discovered." It is not enough for plaintiffs to "purport to demonstrate active concealment through a reiteration of the same list of representations and omissions . . . that is alleged to constitute the fraud itself." *Id.* at 1143.

Plaintiff's response acknowledges that to invoke the doctrine of fraudulent concealment, she must plead (i) wrongful concealment by defendants, (ii) which prevented her discovery of the nature of the claim within the limitations period, and (iii) her due diligence in pursuing the discovery of the claim. (Br. 17) But plaintiff does not point to any allegation in her Complaint of "activities undertaken by the defendant to keep an already completed fraud from being discovered," much less "specific details" of those activities or due diligence on her own

8

part. She cannot do so because her Complaint does not contain any such allegation, and that alone precludes her fraudulent concealment argument.

Plaintiff does argue that defendants' failure affirmatively to "disclose" the alleged "fraud" to her constitutes fraudulent concealment. (Br. 17-18)  But there is no dispute that New York law governs here, and under that law "equitable estoppel does *not* apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of the plaintiff's underlying substantive cause of action." *Kaufman v. Cohen*, 307 A.D.2d 113, 122, 760 N.Y.S.2d 157, 167 (1st Dep't 2003) (emphasis added). "Otherwise, the mere assertion of an underlying fraudulent act would always trigger equitable estoppel and render the discovery accrual rule for fraud actions superfluous. *Id.*  Plaintiff does not cite any case applying New York law in which a court found that a statute of limitations should be tolled due to a broker's (or any fiduciary's) silence.[7]

## III.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM

### A.    Plaintiff Fails To State A Claim For Fraud

Defendants' opening brief addressed (at 12-21) every category of allegation in the Complaint and showed none of them meets the requirements for pleading a fraud claim.

---

[7]    Several of plaintiff's cases either involve an affirmative fraudulent concealment, or are simply about fraud claims, not fraudulent concealment sufficient to toll a statute of limitations. *See In re Acquino's Will*, 187 Misc. 7, 58 N.Y.S.2d 63 (N.Y. Surr. Co. 1945) (plaintiffs showed active fraud; accountants fabricated entries in their books and handled estate property belonging to illiterate widow as if it belonged to them); *Coleman & Co. Sec., Inc. v. Giaquinto Family Trust*, 236 F. Supp. 2d 288, 309 (S.D.N.Y. 2002) (statute of limitations was *not* tolled because plaintiff investors should have discovered the alleged fraud; "a reasonable investor exercises 'reasonable diligence'"); *Standish-Parkin v. Lorillard Tobacco Co.*, 12 A.D.2d 301, 786 N.Y.S.2d 13 (1st Dep't 2004) (does not address statute of limitations).

The cases plaintiff cites that did toll a statute of limitations based on a failure to disclose are inapplicable as they were decided on *federal* principles of equitable tolling. *See In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328 (S.D.N.Y. 2000); *Alevizopoulous & Assoc. v. Comcast Int'l Holdings, Inc.*, 100 F. Supp. 2d 178 (S.D.N.Y. 2000), *Dymm v. Cahill*, 730 F. Supp. 1245, 1264 (S.D.N.Y. 1990); *Klein v. Spear, Leeds & Kellogg*, 306 F. Supp. 743 (S.D.N.Y. 1969); *SEC v. Jones*, 05 Civ. 7044, 2006 U.S. Dist. LEXIS 22800 (S.D.N.Y. April 25, 2006). There is no basis in the Complaint to plaintiff's assertion that "Defendants have falsely represented" that "the charts that were shown to Plaintiff" "were merely drafts." (Br. 17)

Plaintiff argues that "attempts to reduce" her "fraud" claim to "separate and distinct misrepresentations, omissions and acts" should be "rejected" (Br. 20), but she does not cite any authority for this approach. Why? Because it is not the law. A plaintiff must allege actual distinct misrepresentations or omissions of material fact made to the plaintiff, Fed. R. Civ. P. 9(b), as well as "the falsity of that representation, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury." *Pope v. Saget*, 29 A.D.3d 437, 441, 817 N.Y.S.2d 1, 3-4 (1st Dep't 2006).

### 1.   Plaintiff Fails To State A Claim For Fraud Based On Statements At The "Initial Meeting"

Defendants' opening brief showed (at 12-15) that plaintiff's allegations about representations supposedly made to her at her initial meeting with Ms. Frankel cannot support a claim for fraud, because plaintiff does not allege how the charts were supposedly false, or that any of the supposed inaccuracies (either in the charts or about Ms. Frankel's education) were material, and cannot allege that any of the supposed misrepresentations proximately caused her losses in the stock market.

Plaintiff argues in response that Ms. Frankel made those representations not only at their initial meeting, but also "throughout the course of Plaintiff's relationship with Ms. Frankel." (Br. 20) But that newly-minted allegation is not in her Complaint and even if it were, it would not help plaintiff for the reasons set out in defendants' opening brief (at 12-15).

Plaintiff next argues that paragraphs 17, 19 and 32 of her Complaint allege facts sufficient to show the charts contained a material misrepresentation. (Br. 21) That is incorrect. Paragraphs 17 and 32 simply state the charts were "false." As defendants showed in their opening brief (at 13), that is not enough to plead a fraud claim. Plaintiff does not distinguish, or

10

even address, the cases defendants cited on that point, nor offer any contrary authority. (*See* Br. 21)

The specific allegations of falsity in paragraph 18 of her Complaint are either inconsistent with the charts (which are attached to the Complaint) or cannot have been material. Thus, paragraph 18 alleges that the charts "claim that $10 million invested . . . in an undefined 'GS Team Portfolio' was worth $32,297,891 on 3/31/99," but "the claimed 'portfolio' for a 'GS Team' was a fiction." However, that allegation is refuted by the plain language of the charts, which state they depict a "composite" that "would have" performed a certain way, not an actual portfolio that "was" worth a certain amount. (Cplt. Ex. A at 1, 2) When a plaintiff's allegations are contradicted by a document considered in determining a Rule 12(b)(6) motion, those allegations are insufficient to defeat the motion. *See Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002); *Rapoport v. Asia Electronics*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000); *see also Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674 (2d Cir. 1995) ("a document that discloses what the complaint alleges it concealed will defeat the allegation of concealment"). Moreover, plaintiff does not allege any facts that suggest the charts' depiction of *performance* was false -- that Ms. Frankel's accounts had *not* "very substantially outperformed the market." [8]

Defendants' opening brief also showed (at 13-14) that plaintiff does not allege the supposed misstatements were material. In response, plaintiff cites only allegations that she relied on the charts' representations about *performance*. As noted, however, she has not alleged any facts that show the charts misrepresented performance. (Br. 22)

Plaintiff next disputes defendants' showing (at 14-15) that she fails to allege any facts suggesting the alleged misstatements proximately caused her any injury. But she merely

---

[8]    Plaintiff does not address defendants' showing (at 14) that her allegation that Ms. Frankel said she would invest plaintiff's money as if it were her own is "puffery" that cannot support a fraud claim.

repeats her allegations of transaction (not loss) causation: that she transferred funds to Ms.

Frankel's management as a result of her "representations." (Br. 23-24) Notably, plaintiff

acknowledges that the funds had been transferred from "an existing account Katherine had

maintained with [another] broker" (Cplt. ¶ 16), but does not (and cannot) allege that had she left

her account with the other broker, she would not have lost money in the market crash of 2000.

Plaintiff seeks to distinguish *Nat'l Commercial Bank, v. Morgan Stanley Asset Mgmt. Inc.*, 94

Civ. 3167, 1997 U.S. Dist. LEXIS 15921 (S.D.N.Y. Oct. 15, 1997), solely on the ground that it

was decided on summary judgment rather than on a motion to dismiss (Br. 15); but that

distinction makes no difference here. The court's ruling in *Nat'l Commercial Bank* was that, as a

matter of law, plaintiffs who opened an account allegedly in reliance on fraudulent statements

could not prove, due to the intervening market fluctuations, that losses in the account six months

later resulted from the statements. Even plaintiff does not (and could not) suggest that anything

she might find in discovery could alter the undisputed fact of the general decline in the stock

market beginning in April 2000. Her argument that this Court may *not* consider the market

conditions as an intervening cause is incorrect, as courts consistently take judicial notice of

precisely that. *See, e.g., Ganino v. Citizens Util. Co.*, 228 F.3d 154, 167 n.8 (2d Cir. 2000)

(district court may take judicial notice of well-publicized stock prices on motion to dismiss). It

is particularly appropriate to do so here, where the gravamen of plaintiff's complaint is that she

lost money in the stock market during the largest market decline since the Great Depression.

### 2.    Plaintiff Fails To State A Claim For Fraud Based On Transactions In Her Account Or "Holding Losses While Taking Profits"

Defendants' opening brief showed (at 15-18) that none of plaintiff's allegations

about the *transactions* in her account can support a fraud claim because they do not set forth any

12

misrepresentation *to her*, much less any misrepresentation on which she relied, and because such a claim is duplicative of her contract claim.

Plaintiff responds that she "does allege that misrepresentations were made to her by Defendants related to transactions in her Account" (Br. 24), but does not cite any paragraph of her Complaint that does so. Apparently recognizing that she does not in fact allege that defendants misrepresented anything to her in connection with the transactions in her account, she then contends that defendants *omitted* certain information -- that they were effecting "transactions in new issues," making "excessive charges" and engaging in a strategy that involved "holding losses while taking profits."[9] But all of these alleged actions were fully disclosed on the account statements and trade confirmations that were timely sent to plaintiff and therefore cannot support a fraud claim based on omissions. For example, it is not disputed that Goldman sent plaintiff monthly account statements that showed all profits taken (under "change in market value") and all losses held (under "current unrealized gain (loss)"). (*e.g.,* Ex. H at 3)[10] Thus, any "holding losses while taking profits," charges and transactions in new issues were fully disclosed.

Finally, plaintiff argues that she satisfies the requirements of *Bridgestone/Firestone Inc. v. Recovery Credit Services*, 98 F.3d 13, 20 (2d Cir. 1996), for maintaining a fraud claim alongside a contract claim:

> (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent

---

[9]    This allegation is bizarre; common sense dictates that "taking profits" on stocks is a good thing, and even "holding losses" can certainly be preferable to selling stocks at a loss. Indeed, that plaintiff makes this allegation of "taking profits" a cornerstone of her fraud claim only underscores how empty that claim is.

[10]    As noted in our opening brief (at 4), the Court may consider the account statements on this motion because they are "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). *See also Bissell v. Merrill Lynch & Co., Inc.*, 937 F. Supp. 237, 239 n.1 (S.D.N.Y. 1996) (considering plaintiff's account statements and margin agreement on motion to dismiss).

13

misrepresentation collateral or extraneous to the contract; or
(iii) seek special damages that are caused by the misrepresentation
and unrecoverable as contract damages.

That is mistaken. Plaintiff concedes "the alleged misrepresentations related to transactions in the Account were *not* collateral or extraneous to the contract." (Br. 26, emphasis added) Moreover, the omissions plaintiff does allege (all contradicted by the account statements) were intrinsically related to the contract.

### 3.    Plaintiff Fails To State A Claim For Fraud Based On "Analyst Reports" And eToys

Defendants showed in their opening brief (at 18-20) that plaintiff's fraud claims arising out of analyst reports fail to state a claim for numerous independent reasons, including that plaintiff (i) does not identify any analyst report, much less any statement in any analyst report, that she alleges was fraudulent; (ii) does not allege why any such statement was false; (iii) does not allege any facts suggesting that anyone at Goldman acted with the requisite degree of intent; and (iv) does not allege facts that show that any losses she sustained in certain stocks at Goldman were caused by the matters at issue in the Settlement Agreements. Plaintiff's response does not point to any such allegations in her Complaint nor dispute that such allegations are required to state a claim for fraud. Rather, she asserts that the "SEC Litigation Release" and "SEC Complaint" and "Final Judgment" attached to her Complaint "contains adequate information." (Br. 27) That is incorrect. Even if plaintiff could avoid the requirement of alleging the elements of fraud in her Complaint by pointing to exhibits, none of the exhibits to which she points alleges that Goldman committed fraud or that anything Goldman did affected market prices or caused any investor to suffer losses. (Cplt. Ex. B)[11]

---

[11]    Plaintiff also responds that she "is not subject to fraud on the market pleading requirements" because she dealt directly with defendants. (Br. 28) She seems to have it backward. Fraud on the market is a theory that *excuses* certain plaintiffs from alleging actual reliance. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 249 (1988). Since plaintiff agrees that theory does *not* apply to her claims, she is required to allege *actual* reliance on the

Defendants' opening brief also showed (at 18-19) that the allegations in *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 18, 799 N.Y.S.2d 170, 174 (2005), provide no basis for a claim because that decision described an alleged conflict that gave Goldman "an incentive to advise eToys to *underprice* its stock" (emphasis added) in the May 1999 IPO, and thus cannot support plaintiff's allegation that Goldman caused eToys stock to be *overpriced* when she bought it five months later in October 1999. (Cplt. ¶¶ 23, 32(x))  In response, plaintiff asserts only that "customers such as Plaintiff suffered losses as a result." (Br. 27)  This bald assertion of losses, without any foundation, does not address defendants' showing that the *EBC I, Inc.* allegations undercut, rather than support, any inference that Goldman caused plaintiff to pay too much for eToys or suffer any resulting losses.

**4.    Plaintiff Fails To State A Claim For Fraud Based On Allegations That Ms. Frankel Represented She Was A Knowledgeable, Experienced Broker And Had Plaintiff's Best Interests At Heart**

Defendants' opening brief showed (at 21) that plaintiff's allegations that "[a]t all times," Ms. Frankel represented she "was a knowledgeable, experienced broker" and "had Plaintiff's best interests at heart" (Cplt. ¶ 32(i), (ii)) cannot support a claim for fraud because they are "puffery" and not actionable, and because plaintiff does not allege any facts suggesting that Ms. Frankel was *not* a knowledgeable and experienced broker or that she did *not* have plaintiff's best interest at heart.  Plaintiff does not respond to this argument.

---

misrepresentations she alleges. *See Water St. Leasehold LLC v. Deloitte & Touche LLP*, 19 A.D.3d 183, 185, 796 N.Y.S.2d 598, 599 (1st Dep't 2005) ("'[p]laintiff must show . . . that defendant's misrepresentation induced plaintiff to engage in the transaction in question"').  Her failure to allege reliance on any analyst reports is another independent reason requiring dismissal of any fraud claims based on those reports.

KL3 2669341.3

**B.    Plaintiff Fails To State A Claim For Breach Of Contract**

Defendants' opening brief showed (at 21-23) that plaintiff fails to plead a contract claim because she does not allege how defendants breached any contract they had with her, nor that any such breach proximately caused any damages.

Plaintiff argues in response that she "is not required to plead every single rule, custom, law or regulation that the transaction in her Account violated." (Br. 29)  But with the exception of the "know your customer" rule plaintiff does not allege *any* rule that was violated, nor cite any authority for her theory that she need not specify each breach.  (*Id.*)  And she does not allege any facts that show defendants violated the "know your customer" rule.  Plaintiff's reference to the "duties of good faith and fair dealing" (Br. 29) is also of no avail because she does not allege conduct by defendants that prevented her from enjoying the fruits of her contract with Goldman. *See 511 West 232nd St. Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 746 N.Y.S.2d 131 (2002).

Plaintiff misunderstands defendants' showing that she cannot ground a claim on her representation that she "understand[s]" that certain transactions "will not be executed by you on a discretionary basis" (Ex. J at 1) because she acknowledged in the same authorization that Goldman "may modify the foregoing discretionary trading policies, without my consent, or notice to me." (*Id* at 2)  While plaintiff contends that defendants "allege that Defendants modified their discretionary trading policies" (Br. 30), defendants made no such allegation. Rather, the point is that plaintiff cannot premise a breach of contract claim on a provision that Goldman advised her it might modify at any time. *See First Lincoln Holdings, Inc. v. The Equitable Life Assurance Society*, 164 F. Supp. 2d 383, 393 (S.D.N.Y. 2001) (granting motion to dismiss breach of contract claim alleging that defendant restricted plaintiff's market timing where defendant "was vested with total discretion to restrict market timing").

16

Plaintiff also argues (at 30-31) that she repeatedly alleged "she was damaged by those acts of Defendants which are the bases for Plaintiff's breach of contract claim." But, as the cases in defendants' opening brief (at 23) make clear, such conclusory allegations are insufficient to sustain a contract claim. *See, e.g., Gordon v. Dino De Laurentiis Corp.*, 141 A.D.2d 435, 529 N.Y.S.2d 777, 779 (1st Dep't 1988) (reversing denial of motion to dismiss contract claim where complaint does not show how alleged breach injured plaintiff). Plaintiff does not address this authority.

Defendants also showed (at 23) that the contract claim *against Ms. Frankel* must be dismissed for the additional fundamental reason that plaintiff does not (and cannot) allege she ever entered into any contract with Ms. Frankel. Plaintiff argues in response that she alleged defendants breached the Trading Authorization, which the "applicable rules required Frankel to sign." (Br. 31) But the Trading Authorization is not signed by Ms. Frankel and contemplates by its terms that only the customer will sign it. (Ex. J) It is that document, not plaintiff's misstatement of it, that governs on this motion. *See* cases cited at p. 13 n. 10 above. Plaintiff has not alleged any facts showing she ever even entered into a contract with Ms. Frankel.

### C.    Plaintiff Fails To State A Claim For Breach Of Fiduciary Duty

Defendants' opening brief showed (at 23-24) that plaintiff's claim for breach of fiduciary duty also fails to state a claim because it is preempted by the Martin Act, N.Y. Gen. Bus. Law 352 et seq., and plaintiff does not allege any facts that show her losses were caused by defendants' conduct rather than by the decline in the stock market in 2000.

Plaintiff responds (Br. 32, 33) that her breach of fiduciary duty claim is not preempted because only "claims *pursuant to* the Martin Act" are preempted, and contends there is a "split among the courts with respect to this issue," citing *Cromer Fin. Ltd. v. Berger,* 00 Civ. 2284, 2001 US. Dist. LEXIS 14744 (S.D.N.Y. Sept. 19, 2001), and *Scalp & Blade, Inc. v.*

*Advest. Inc.,* 281 A.D.2d 882, 722 N.Y.S.2d 639 (4th Dep't 2001). But those two cases (which

involved claims for negligent misrepresentation, not breach of fiduciary duty) have aptly been

described as "solitary islands in a stream of contrary opinion." *Nanopierce Techs., Inc. v.*

*Southridge Capital Mgmt. LLC,* 02 Civ. 0767, 2003 U.S. Dist. LEXIS 15206, * 13 (S.D.N.Y.

Sept. 2, 2003).

      The Martin Act provides the New York Attorney General with the sole discretion

to investigate securities violations within or from the state of New York. See *N.Y. Gen. Bus. Law*

*§ 352 (1).* Allowing private plaintiffs to pursue a related cause of action "is not consistent with

the legislative scheme underlying the Martin Act." *CPC Int'l Inc. v. McKesson Corp.*, 70 N.Y.2d

268, 279, 519 N.Y.S.2d 804, 807 (1987). Thus, causes of action related to securities that do not

include scienter as an element are preempted by the Martin Act. Courts consistently hold that

breach of fiduciary duty claims under New York law are, indeed, preempted, *see Nanopierce,*

2003 U.S. Dist. LEXIS 15206 ("negligent misrepresentation and breach of fiduciary duty claims

. . . like the Martin Act itself, do not require proof of deceitful intent; common law fraud,

however, does"), because allowing a plaintiff to go forward on such a claim "would effectively

permit a private action under the Martin Act." *Dujardin v. Liberty Media Corp.*, 359 F. Supp. 2d

337, 355 (S.D.N.Y. 2005).[12] As the Second Circuit has ruled: "principles of federalism and

respect for state courts' interpretation of their own laws counsel against ignoring the rulings of

those New York courts that have taken up the issue." *Castellano v. Young & Rubicam, Inc.*, 257

---

[12]    *See also Sedona Corp. v. Ladenburg Thalmann & Co.*, 03 Civ. 3120, 2005 U.S. Dist. LEXIS 16382 (S.D.N.Y. Aug. 9, 2005); *Marcus v. Frome*, 329 F. Supp. 2d 464, 475-76 (S.D.N.Y. 2004) (same); *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, 02 Civ. 1230, 2002 U.S. Dist. LEXIS 16995 (LMM) (S.D.N.Y. Sept. 10, 2002) (same); *Spirit Partners, L.P. v. audiohighway.com*, 99 Civ. 9020, 2000 U.S. Dist. LEXIS 7236 (S.D.N.Y. May 25, 2000) (same); *Gabriel Capital, L.P. v. Natwest Fin., Inc.*, 137 F. Supp. 2d 251, 266-67 (S.D.N.Y. 2000) (dismissing negligence claim as violative of the Martin Act); *Bibeault v. Advanced Health Corp.*, No. 97 Civ. 6026, 1999 U.S. Dist. LEXIS 7173 (S.D.N.Y. May 12, 1999) (Martin Act bars claims for breach of fiduciary duty).

KL3 2669341.3

F.3d 171, 190 (2d Cir. 2001) (affirming dismissal of a breach of fiduciary duty claim pursuant to

the Martin Act).

## IV.    IF THE COURT DOES NOT DISMISS PLAINTIFF'S CLAIMS, IT SHOULD DIRECT THE PARTIES TO ARBITRATION

Finally, defendants' opening brief pointed out (at 24-25) that if this Court does

not dismiss plaintiff's claims (as it should), it should direct the parties to arbitration for a ruling

on the merits because the parties agreed that "any controversy" arising out of or relating to

plaintiff's account "shall be settled by arbitration." (Ex. I ¶ 12)

Plaintiff argues in response that the FINRA panel "decided it would not hear

plaintiff's claims" because of its six-year rule. (Br. 35) But there is nothing to stop plaintiff

from seeking to arbitrate her claims before another arbitral forum permitted by her agreement

with Goldman, including one that does not have a six-year rule.

## CONCLUSION

For all of these reasons and those set forth in their opening brief, defendants

respectfully request the Court to dismiss the Complaint with prejudice. In the alternative, this

Court should direct the parties to arbitration.

Dated: New York, New York
      August 1, 2008

KRAMER LEVIN NAFTALIS & FRANKEL LLP


_____/s/ Michael J. Dell_____
    Michael J. Dell (MD-7714)
    Karen Steinberg Kennedy (KSK-0357)
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100
Attorneys for Defendants

19